Hon. ASAHEL PECK,
Hon. WILLIAM C. WILSON, } Assistant Judges.
Hon. BENJAMIN H. STEELE,

---

## Isaac W. Aiken *v.* Alonzo C. Blaisdell.*

*United States License Law. Revenue. Intoxicating Liquor. Illegal Contract.*

The general principle is everywhere recognized that a contract made in violation of law is void, and no action can be maintained to enforce it.

The distinction spoken of in the books, between a law that forbids an act and imposes a penalty for its commission, and a law that imposes a penalty without in terms forbidding the act, *held* to be no distinction in legal effect.

The act of Congress, section 57 and the following sections, commencing on page 152 of the acts and resolutions of the *second* session of the thirty-seventh Congress, providing that no person, etc., shall carry on certain kinds of business named therein

---

* Heard at the January term, 1868.

until he or they shall have obtained a license therefor in the manner therein provided, *held* to operate upon the person only, and not upon business. The law is strictly a revenue law, the sole object being to get money into the treasury, not to diminish, restrain, control or regulate business. The transaction of all kinds of business was just as legal after the passage of the law as before. Therefore, an action may be maintained upon a contract of sale made by a person having no license, though subject to the penalty for doing business without a license.

If a seller of intoxicating liquor in New York, to a party in Vermont, intentionally aid the purchaser in evading the prohibitory law of Vermont in respect to the traffic in intoxicating liquors, by forwarding the liquor to the purchaser in a concealed or disguised form, calculated to accomplish that object, the seller can not recover for the liquor in this state, even though it was not agreed between the parties, prior to or at the time or on the occasion of the sale, that the seller would thus aid the purchaser.

ASSUMPSIT on three promissory notes, each signed by the defendant. Plea, the general issue. Trial by jury, at the March term, 1867, KELLOGG, J., presiding.

It appeared that on the 24th of May, 1864, the defendant, who was a grocer in trade at Rutland, Vt., went to Albany, N. Y., and there purchased of the firm of Crapo & Aiken, which then consisted of Chauncey B. Crapo and said Isaac W. Aiken, at the store occupied by said firm in Albany, a large quantity of intoxicating liquors, amounting in the whole to $571.65; and that he again went to Albany on the 29th of August, 1864, and purchased of the same firm, at their said store in Albany, another large quantity of intoxicating liquors, amounting, in the whole, to $1,058.78, both purchases amounting to $1,630.43, and that the contract for the purchase of said liquors was, in each case, made with Isaac W. Aiken personally.

The defendant's evidence tended to show that at the time of the purchase, he notified Isaac W. Aiken of the provisions of the laws of Vermont in respect to intoxicating liquor and the traffic in the same, and also informed him that he, the defendant, bought said liquors for the purpose of selling the same in Vermont, in violation of the laws of Vermont, and that he could not have the liquors come all at once to him, or have the liquors directed openly to him, without incurring the risk of their being seized by the officers of the law, and that he and others had had their liquor seized in Rutland; that Isaac W. Aiken thereupon agreed to send the liquors to the defendant, at Rutland, in a concealed or disguised form, so as to avoid seizure; that in pursuance of said

agreement, the liquors were sent to the defendant at Rutland, from time to time, in five and ten gallon kegs, the first two kegs sent being put into dry casks and packed around with salt and paper, and sent as freight, and the remainder of the kegs sent being tied up in sacks and forwarded by express, and also in a few instances in casks marked with false marks, as " *benzine*" or " *cider vine-gar*," or [A] or [B]; that said liquors were so sent by the firm of Crapo & Aiken, or Isaac W. Aiken, who carried on the business of said firm as its surviving partner after the death of Crapo, from time to time, as ordered by the defendant, until the month of January, 1865, and that the liquors so sent to the defendant were sold by him, in Vermont, in violation of law.

The plaintiff's testimony tended to show that all of the liquors purchased by the defendant were delivered to him at the store occupied by the firm of Crapo & Aiken in the city of Albany, at the time and on the occasion of each purchase respectively, and that the purchases were made with the understanding that the liquors so purchased were to be delivered to him at said store at the time of making the purchase; that after making the first purchase above mentioned, but before leaving the store on that occasion, the defendant told Isaac W. Aiken that there was a liquor law in Vermont which would prevent him (the defendant) from taking the liquor all at once, and that he should send for the same in small quantities, and would send kegs as he wanted them filled, to be filled from said liquors; that Isaac W. Aiken replied that they (said firm of Crapo & Aiken) would mark said liquors for him and set them apart in a loft in the store for his use, and would fill his kegs as he sent them, without any extra charge; that as the defendant selected the liquors, the barrels or packages in which the same were contained were rolled out and marked with the defendant's initials and place of residence, and set apart in the loft in accordance with this understanding; that the liquors were bought by the defendant on a credit of three months, and that the defendant told Isaac W. Aiken that he wished to have a bill sent to him with each keg forwarded to him; that sometimes the defendant ordered a keg, and sometimes a barrel, and sometimes two barrels, of the liquor to be sent to him at one time; that the

42

defendant never told Isaac W. Aiken anything in respect to the provisions of the laws of Vermont in respect to intoxicating liquor and the traffic in the same, except that there was a liquor law in Vermont which would prevent him from taking the liquors all at once, and never told said Aiken that he (the defendant) bought the liquors to sell in Vermont in violation of law; that there never was any agreement made between the defendant and Isaac W. Aiken that the liquors should be sent to the defendant at Rutland in a concealed or disguised form, or under any false marks, so as to avoid seizure; that although liquors were frequently sent to the defendant in a keg placed in a sack or bag, there never was any understanding or agreement between Isaac W. Aiken and the defendant that they should be sent in that or any other disguised manner, and that said sack was furnished by the defendant, and the keg was sent back to him in the same sack in which it was received from him; that no cask or package containing liquors was ever sent, or agreed to be sent, to the defendant by the firm of Crapo & Aiken, or by Isaac W. Aiken, which was falsely marked; that Isaac W. Aiken never proposed to the defendant at any time to send forward any of said liquors to him concealed under secret or disguised marks, and never assented to any arrangement of that character, and never had any talk with the defendant on that subject, and that the liquors which were sent to the defendant were always sent plainly marked, being sometimes marked with the defendant's initials, and sometimes [B], and sometimes " A. C. Blaisdell," and that the sack or bag containing the keg usually had a card on which was the defendant's name attached to it when it was sent by the defendant to said store of the firm of Crapo & Aiken, in Albany, for the purpose of being filled; that in putting up and forwarding the liquors which were sent to the defendant, as aforesaid, nothing was done by the firm of Crapo & Aiken, or by Isaac W. Aiken, for the purpose of disguising or concealing the character of the packages in which said liquors were sent to the defendant.

It appeared that the defendant paid the amount of the several bills sent to him with the kegs or packages of the liquors forwarded to him by express, as aforesaid, by delivering, to the ex-

press agent at Rutland, the amount of each bill respectively, at or soon after the time when it was received, and that said payments were duly forwarded by express to the firm of Crapo & Aiken, at Albany, until sometime prior to January, 1865, when said firm requested the defendant to discontinue sending the money to them for each package or keg, in order to save the expense of the express charges on money sent in small sums from Rutland to Albany. The liquors were forwarded to the defendant from time to time, in such quantities as were directed by him, either by the firm of Crapo & Aiken, or by Isaac W. Aiken, who carried on the business of that firm as its surviving partner, after the death of Crapo, until the 14th of January, 1865. Crapo died in the intermediate time between the commencement of the account and the 1st of January, 1865. On said 14th of January, 1865, the defendant executed to Isaac W. Aiken four promissory notes for the balance due on said account against him, (the defendant), the account containing charges for teas, soaps, and other general merchandise, in addition to the charges for said liquors, and each of the four notes was dated on the 2d of January, 1865, and two of said four notes are the two promissory notes declared on in the plaintiff's declaration in this action, and one other of said four notes was replaced by a new note which was dated on the 4th of May, 1865, and is also declared on in said declaration. There was evidence tending to show that the other of said four notes had been paid.

The plaintiff introduced, as evidence, a statement or copy in detail of the account in favor of the firm of Crapo & Aiken, and of Isaac W. Aiken, as the surviving partner of the said firm, against the defendant, for the balance due upon which, the said four promissory notes were executed as aforesaid, and the same was a part of the case. Isaac W. Aiken, among other things, testified on the trial that he thought that the defendant had paid a sum sufficient to cover all the items of said account, excepting those items which were for said liquors. The defendant, among other things, testified that he had received, of the liquors so purchased by him, " somewhere from ten to twelve hundred dollars

worth" at different times, and that Isaac W. Aiken or the plaint-
iffs now hold the balance of the same.

The plaintiff introduced as evidence two United States internal
revenue licenses to the said Chauncey B. Crapo, each bearing date
on the 1st May, 1864, and being for the term of one year from
that date, one being a license as a wholesale dealer, and the other
a license as a dealer in liquor, in said city of Albany, each signed
by Theodore Townsend, collector of internal revenue for the
district in which said city of Albany is situated, with an assign-
ment and confirmation by said collector attached to each, dated
June 25, 1864, assigning and confirming said licenses respect-
ively for the remainder of said year to the firm of Crapo & Aiken.
Isaac W. Aiken, when examined as a witness in behalf of the
plaintiff, testified that the application for said licenses was made
by a clerk of said firm previous to the 1st of May, 1864, and that
by a mistake of said clerk the application was made in the name
of Crapo alone, instead of in the name of the firm of Crapo &
Aiken, and that the licenses were not taken out and paid for until
the 25th June, 1864, at which time said error or mistake was
discovered, and that the error or mistake, as soon as it was discov-
ered, was immediately corrected by said assignment and confirma-
tion attached to each license, and that the United States tax for
each of said licenses was paid by the firm of Crapo & Aiken for
the use and benefit of that firm, and that each of the licenses,
with the assignment and confirmation attached to the same, was
taken out and paid for as aforesaid, at one and the same time.
To this portion of the testimony of Isaac W. Aiken the defendant
objected, but the same was admitted by the court, and to the de-
cision of the court by which the same was admitted, the defendant
excepted.

The defendant requested the court to charge the jury as fol-
lows, viz.:

" *First*, That if the jury should find from the evidence that the
said Isaac W. Aiken, on the occasion of making the contract by
which the said liquors were sold to the defendant, knew of the
prohibitory law of Vermont in respect to the traffic in intoxicat-
ing liquors, and, on the occasion of said sale, agreed with the
defendant that said Isaac W. Aiken would send said liquors for-

ward to the defendant in a way which would conceal what the same were, and that this arrangement was subsequently acted upon by said Crapo & Aiken, or said Isaac W. Aiken, then the plaintiff would not be entitled to recover in this action.

" *Second,* That if such arrangement for forwarding the liquors to the defendant was made between said Isaac W. Aiken and the defendant on the occasion of the sale of the same, although in the order of time after the parties had agreed upon the terms of the sale as to price, quantity, and quality, and if such arrangement was subsequently acted upon by said Crapo & Aiken or said Isaac W. Aiken in forwarding the liquors to the defendant, the plaintiff was not entitled to recover in this action.

" *Third,* That if said Isaac W. Aiken, after the sale of said liquors to the defendant, intentionally aided the defendant in evading said prohibitory law of this state in respect to the traffic in intoxicating liquors in forwarding the liquor to the defendant, the plaintiff can not recover in this action, even though it was not agreed between said Isaac W. Aiken and the defendant at the time or on the occasion of said sale that he would thus aid the defendant.

" *Fourth,* That if the jury should find that, at the time of the purchase of said liquors by the defendant, the vendors had no United States internal revenue license, then the contract by which said liquors were sold to the defendant was void, and the plaintiff could not recover in this action."

The court instructed the jury agreeably to the first and second requests, but refused to instruct them agreeably to the third and fourth requests; and to the refusal of the court to charge the jury agreeably to the third and fourth requests, the defendant excepted. In respect to all other questions in the case, the court gave to the jury such instructions as the case called for, and as were satisfactory to the defendant. The jury returned a verdict in favor of the plaintiff for $1,183.45 as damages, and judgment was rendered on said verdict.

*W. G. Veazey, C. H. Joyce* and *E. Edgerton,* for the defendant.

I. The defendant was entitled to the instructions called for in the *third* request.

*First,* If the vendor of goods, sold in another state, intentionally aid the vendee to use the goods in violation of the laws of

this state, he can not maintain an action upon his contract in the courts of this state.  *Gaylord* v. *Soragen*, 32 Vt., 110 ; *Territt et al.* v. *Bartlett*, 21 Vt., 184 ; Story on the Conflict of Laws, 313, § 253 ; *Pellicat* v. *Angel*, 2 Cromp. Mees. & Rosc., 311 ; *Foster* v. *Thurston*, 11 Cush. 322.

*Second*, Upon principle we were entitled to the charge called for in the third request.   Story on Conflict of Laws, § 244, and cases there cited.

It is well settled that contracts growing immediately out of and connected with an illegal transaction, and even new contracts, if they are in part connected with a past illegal transaction, and grow immediately out of it, though in themselves valid, can not be enforced.   They are considered as part of the *res gestæ*, or original transaction, and void.   Story's Conflict of Laws, § 247 ; *Armstrong* v. *Toler*, 11 Wheaton 261 ; *Canaan* v. *Brice*, 3 Barn. & Ald., 179.

II. The defendant was entitled to the instructions called for in the fourth request.   See page 152 of acts and resolutions of the second session of the thirty-seventh congress, § 57, § 58, § 59 and § 64, parts 3 and 4.   And the amendment thereto of § 64 in the acts and resolutions of the third session of the thirty-seventh congress, approved March 3, 1863, pages 107, 108; § 42 and § 43.

These were the laws in force on the 24th May, 1864, the time when the first lot of liquor was purchased.

The firm Crapo & Aiken had " *obtained*" no license within the meaning of the statute on said 24th May.   The question is, can an action be maintained by a party, required by law to have a license to carry on a certain kind of business, upon a contract made in that business while he has no license ?

It is well settled that whatever is done in contravention of a statute can not be made the subject matter of an action.   *Langton* v. *Hughes*, 1 M. & L. 593 ; *Territt et al.* v. *Bartlett*, 21 Vt., 188 ; *Duffy* v. *Gorman*, 10 Cush. 45.

The only exception to this rule, or apparent exception, is that found in a few old English cases to this extent, viz.: where the statute is enacted *solely* for obtaining a revenue, and is not *prohibitory*.   In a few such cases, it has been held that an action can

be maintained.    But that is as far as the exception has ever gone.
If the statute was prohibitory, though enacted only for revenue,
the action could not be maintained.    This statute is prohibitory in
terms and in having a penalty.    Penalty implies prohibition, and
the only exception to this rule ever even suggested, is where the
penalty is put into the statute *solely* for the *protection* of the rev-
enue.    Neither of those objections are now regarded as well
founded.    *Territt et al.* v. *Bartlett,* 21 Vt., 184, and cases cited;
*Bancroft* v. *Dumas,* 21 Vt., 456, and cases cited; *Duffy* v. *Gor-
mon,* 10 Cush., 45; *Craig* v. *Mo,* 4 Peters, 410; *Armstrong*
v. *Tolor,* 11 Wheaton, 298; *Exrs. of Cambioso* v. *Assignees of
Moffit,* 2 Wash. C. C. R., 98; Brown's Legal Maxims, 486;
Story's Conflict of Laws, § 257; *Cope* v. *Rowlands,* 2 Mees. &
Wel., 157; 2 Starkie's Evi., 87, note; *Bartlett* v. *Vinor,* Cath.,
486, cited in 10.Bing., 107; *Foster* v. *Taylor,* 27 E. C. L., 230;
*Foster* v. *Thurston,* 11 Cush., 322.


   *W. H. Smith, Prout & Dunton,* for the plaintiff.
   The refusal of the court to charge as per third request was
justified for several reasons.  · It is the *contract of sale* that is in-
volved and sought to be enforced in this action.    That, as we
have seen, was *complete and valid.*    How can any subsequent
transaction affect the validity of said contracts of sale?    We in-
sist that whatever might have been done, not referable to or con-
nected with said sales, was wholly immaterial as affecting the
contracts, or the right of the plaintiff to recover in this action.
Subsequent aid to the defendant must have been wholly voluntary,
without purpose or benefit to the vendors, without *consideration*
or consequences under the law.
   As a subsequent and independent transaction, not connected
with the contract, the vendors had the same rights and subject to
the same and no other liabilities as any other person.    And had it
been in their line of business, they might even have freighted the
goods and delivered them to the defendant at his grocery here,
and as we insist only been subject, under our liquor law, to the
penalties for furnishing.    Such subsequent contract, if made and
executed for the purpose of aiding the defendant to break the

law, might be void. But a void contract will not be allowed to vitiate a prior valid one, though referring to the same subject matter. *Ogden* v. *Barker*, 18 Johns., 87.

The evidence given by Aiken as to the manner of procuring the revenue licenses, etc., was properly admitted. It does not vary the papers, but only shows the circumstances attending the procuring of them and the occasion of their being as they appear.

Whether the vendors had internal revenue licenses is wholly immaterial between these parties. That is a matter between them and the Government, a mere question of internal revenue. Dealings of parties and the transaction of business are not *void* for want of licenses. It would strangely complicate the business of the country if the validity of contracts and transactions depended upon whether parties, conducting the great variety of business carried on under licenses of various kinds, had the proper and valid permits from the Government. And yet we insist that the vendors had proper licenses at the time of *both* sales. Probably no question will be made as to the second sale on the 29th of August 1864. Besides, the giving of the notes was a ratification of the original contract, and a waiver of any defense for want of license. *Pepper* v. *Haight*, 20 Barb., 429.

The opinion of the court was delivered by

PIERPOINT, C. J. The first question I will consider arises upon the fourth request, which was, " That if the jury should find that, at the time of the purchase of the said liquors by the defendant, the vendors had no United State revenue license, then the contract by which the said liquors were sold to the defendant was void, and the plaintiffs could not recover in this action." The county court refused to charge according to this request. It may be well to remark that, from the case, it is apparent that there was no intentional violation of the laws of the United States on the part of the plaintiffs. They supposed the necessary steps had been taken to comply with the requirements of the law, and that they were in the legitimate and legal prosecution of their business. The legal effect of what had been done in that respect upon this contract, or their liability for the penalty, I am not now considering. But

conceding that, at the time of the sale of the property to the defendant, the plaintiffs had not obtained a license for the prosecution of their business, as required by the laws of the United States, what is the effect of the want of such license upon the contract of sale ? Is the contract for that reason void ? The general principle is every where recognized that a contract made in violation of law is void, and no action can be maintained to enforce it. The act of congress relating to this subject provides that no person, etc., shall be engaged in, prosecute, or carry on, either of the trades or occupations mentioned in section 64 of the act, until he or they shall have obtained a license therefor in the manner thereinafter provided. It is conceded that the occupation of the plaintiffs, in the prosecution of which the contract in question was entered into, was one of those mentioned in section 64.

The act further provides for the manner of procuring such license, and the amount to be paid therefor. It further provides, that if any person or persons shall exercise or carry on any trade, etc., for which a license is required by the act, without taking out such license, he, she, or they shall, for every such offence, forfeit a penalty equal to three times the amount of the duty or sum of money imposed for such license.

That this act is prohibitory, all will agree. It is prohibitory in its terms, and it is also prohibitory because it imposes a penalty for its violation. All the authorities agree that where the law imposes a penalty for the commission of an act, the act is thereby prohibited. The law implies a prohibition from the imposition of a penalty.

A distinction is often spoken of in the books, both by judges and text writers, between a law that forbids an act and imposes a penalty for its commission, and a law that imposes a penalty without in terms forbidding the act, in respect to their legal effect. But I have seen no adjudged case where the decision really turned upon that distinction. And I confess I am unable to see what difference there can be in the legal effect of a law that prohibits an act and imposes a penalty, and a law that imposes a penalty and thereby prohibits the act. The act is prohibited in both cases, and how the effect of the prohibition can be influenced by the man-

ner in which it is created, I do not understand. It may be said that where an act of the legislature is in terms prohibitory, it shows the intent of the legislature; but I see no reason why the rule of law should not apply to law-makers as well as to others, that is, that all persons are presumed to intend the legal effect of what they do.

The question recurs: Was this contract made in violation of the act of congress? Or in other words, did congress, by the act referred to, intend to prohibit such a transaction, so as to invalidate the sale? This, we think, must be determined by the object, intent and purpose of congress in passing the law under consideration. Did congress intend that the act should operate upon the business of community referred to, or only upon the persons that should engage in the business? It was manifestly not the intention of congress, by the enactment referred to, to make any kind of business illegal, or to prohibit it. The purpose was not to diminish, restrain, control, or regulate business. The transaction of all kinds of business was just as legal after the passage of the law as before. The law is strictly a revenue law, the sole object being to get money into the treasury, and that is accomplished by requiring all persons that engage in certain kinds of business to contribute a certain amount towards paying the liabilities of the government. Its object is to raise money, and not to regulate the business of the country. If a man engages in the kind of business referred to, he is engaged in a legal business, whether he has a license or not. If he has no license, he has no legal right to do it, and subjects himself to the penalty. The law, we think, was intended to operate upon the person, and not upon the business. If the object of the law had been to prohibit certain kinds of business, or to regulate it, with a view to its effect upon public morals or public security, by limiting it in its extent, or the place where it is to be carried on, or the persons who shall conduct it, or otherwise, in all such cases the law operates upon the business as well as the person; revenue mainly in such cases is not the object, it is only incidental, or the means by which the law regulates and controls the business. The act in question imposes no

restrictions upon the business ; all are at liberty to engage therein where, and when, and to any extent they choose, upon paying for the license.

The case of *Smith* v. *Mawhood*, 14 Mees. & Wels., 452, is in point. In that case the action was brought to recover the price of tobacco sold. The act of parliament required that all dealers in tobacco should have a license and put their names over the door of their place of business, or forfeit a penalty. The act had not been complied with. PARK, B., said: "Looking at the act of parliament, I think its object was not to vitiate the contract itself, but only to impose a penalty on the party offending, for the purpose of the revenue." ALDERSON, B., says : "Does the legislature mean to prohibit the act done, or not ? If it does, whether for the purposes of revenue or not, then the doing of the act is a breach of the law. But here the legislature has merely said that when the party carries on the trade, etc., he shall be liable to a certain penalty unless he complies with the requirement of the law. He is liable to the penalty, therefore, by carrying on the trade, if the requisites are not complied with. And there is no addition to his criminality if he makes fifty contracts for the sale of tobacco in such a house. It seems to me, therefore, that there is nothing in the act to prohibit every act of sale, but that its only effect is to impose a penalty for the purpose of the revenue, on the carrying on of the trade without complying with its requisites."

In *Johnson* v. *Hudson*, as referred to in Story's Conf. of Laws, 748, where a person sold tobacco without previously complying with the statute regulations as to obtaining a license, it was held that he could sue the vendee for the price, since the contract of sale was wholly independent, and collateral to the illegality.

In *Wetherell* v. *Jones*, it is said where a contract which a plaintiff seeks to enforce is expressly or impliedly forbidden by the statute or common law, no court will lend its assistance to give it effect. But where the consideration and the matter to be performed are both legal, we are not aware that a plaintiff has ever been precluded from recovering by an infringement of the law not contemplated by the contract in the performance of something to be done on his part.

We think this case is distinguishable from those relied upon by the counsel for the defendant, by the fact that in those cases the laws, that were held to render the contracts void that were sought to be enforced, were enacted for the express purpose of prohibiting or regulating the business in the course of which the transactions under consideration arose, and in the disposition of which no question like the present was involved.

This view renders it unnecessary for us to consider the effect of the fact that such part of the property as was delivered before the plaintiffs obtained their license was paid for on its delivery, and that the balance was received by the defendant after the plaintiffs had obtained their license, and had a legal right to prosecute their business without incurring a penalty, or the fact that after the whole had been delivered the notes now in suit were executed upon a general settlement of their accounts.

We think the defendant was not entitled to the charge asked for in the fourth request.

The defendant in the third request asks the court to charge the jury " that if the plaintiffs, after the sale of said liquors to the defendant, intentionally aided the defendant in evading the prohibitory law of this state in respect to the traffic in intoxicating liquors, in forwarding the liquor to the defendant, the plaintiffs can not recover in this action, even though it was not agreed between said plaintiff and the defendant, at the time or on the occasion of the sale, that he would thus aid the defendant."

The evidence on the part of the defendant tended to show that, at the time of the sale of the liquors, the plaintiff was informed by the defendant of the existence of the prohibitory law of Vermont, and that the defendant was purchasing the liquor for the purpose of selling it in violation of the law, and that he could not have the liquor come all at once to him, or have it directed to him openly, without risk of seizure, and that the plaintiff agreed to send the liquor to him in a concealed or disguised form, so as to avoid seizure, and that in pursuance of said agreement he did so send it. This the plaintiff denies, but he does not deny that the defendant requested him to send the liquor forward in small quantities, and that he agreed to do so ; he does not deny that he

knew of the prohibitory law of this state, although he denies that the defendant told him of it. Now if the plaintiff afterward, in the execution of the contract as originally made, in delivering the property in small quantities for the purpose and with the intent to enable the defendant to evade and violate the prohibitory law of this state, puts up and forwards the liquor in a concealed or disguised form calculated to accomplish that object, he thereby renders invalid the original contract so that he can not recover upon it. Such act on the part of the plaintiff is not a separate transaction, disconnected from the original contract, but is immediately and directly connected with it. It is done in carrying out and executing the contract, and when in the act of forwarding and delivering the property as required by that contract. Story in his work on Contracts, section 625, says: "If the vendor pack goods in a particular manner by order of the buyer, with the knowledge that they are to be smuggled, and for the purpose of affording facility for smuggling, the contract is wholly void."

This principle is expressly decided in *Gaylord* v. *Soragen*, 32 Vt., 110. ALDIS, J., says: "Although mere knowledge of the unlawful intent of the vendee by the vendor will not bar him from enforcing his contract to recover for the goods in our courts, yet it is well settled that if he in any way aid the vendee in his unlawful design to violate our law, such participation in the illegal enterprise will disqualify him from maintaining an action on his contract in this state. The participation by the vendor must be active to some extent, he must do something, though indirectly, in furtherance of the design of the vendee to violate our laws. Mere omission to act is not enough, but positive acts in aid of the unlawful purpose, however slight, are sufficient."

But it is said that under the charge of the court below as given, the jury must have found that, at the time of the sale as originally made, there was no agreement that the liquor should be sent forward in a concealed form for an unlawful purpose, and that a subsequent arrangement to that effect would not vitiate the contract. Suppose the contract, as at first concluded, had been reduced to writing, signed by the parties, and nothing said about the manner of its being forwarded; the next day they arrange

as to the manner of its being sent on, and thereupon make a memorandum at the bottom of the writing, in these words: "The above mentioned liquor to be forwarded in small quantities, as ordered, in a concealed or disguised form, and under false marks, so as to enable the purchaser to evade the prohibitory law of Vermont," and sign it. Would not such memorandum modify the original contract? in fact, become a part of it? Would any pleader dare to bring an action upon it without embracing that memorandum as a part of it? And we think it would require quite as much courage to include it, for no intelligent lawyer could hope to stand in court a moment on such a paper; and yet the writing adds nothing to the nature of the transaction; it only enables us to look at it all at once, which is not so easily done when you have to take the story from the mouths of witnesses.

As the defendant's evidence tended to show that some arrangement of the kind referred to was entered into and acted upon by the plaintiffs, we think the defendant was entitled to the charge asked for in the third request.

Judgment reversed and case remanded.