MILLER RUBBER COMPANY OF NEW YORK, a Corporation, Respondent, v. JAMES H. HOLES, Appellant.

(228 N. W. 204.)

Opinion filed December 10, 1929.

*Clair F. Brickner,* for appellant.

*Lashkowitz & Smith,* for respondent.

CHRISTIANSON, J. This is an action upon six promissory notes aggregating $3,200, which were executed and delivered by the defend-

ant to the plaintiff on March 13th, 1928. The defendant interposed an answer wherein it admitted that the plaintiff is a foreign corporation and alleged that it had failed to comply with the laws of North Dakota relating to foreign corporations doing business therein; that the notes sued upon are North Dakota contracts, executed and delivered in this state, and "were made and accepted in the furtherance of plaintiff's doing business in the state of North Dakota." The case was brought to trial before a jury, upon the issues thus framed. During the course of the trial the defendant asked for and was granted leave to amend the answer so as to set forth as a further defense that the consideration for the notes described in the complaint was "the sale of tires within the state of North Dakota by the plaintiff to the defendant;" that such tires were sold in violation of §§ 9975 and 9976, Comp. Laws 1913, in that the said tires were "without the name of the manufacturer and the year in which the same were manufactured, permanently and conspicuously marked on said tires in raised type, cast with the said tires, and that said tires were for use on motor vehicles." At the close of all the evidence both parties moved for a directed verdict. The jury was discharged and the trial court subsequently made findings and conclusions in favor of the plaintiff. Judgment was entered accordingly and the defendant has appealed.

Appellant urges two grounds for a reversal of the judgment: (1) That the plaintiff was engaged in business in North Dakota without complying with the laws thereof relating to foreign corporations; that consequently it has no legal capacity to sue, and that the notes in suit are void; and (2) That the consideration for the notes in suit consisted of tires, sold by the plaintiff to the defendant in this state in violation of §§ 9975 and 9976 Comp. Laws 1913, and that hence the notes are void. These contentions will be considered in the order stated.

(1) The statutes relied upon by the appellant under its first defense read as follows:

Sec. 5238. "No foreign corporation, association or joint stock company, except an insurance company, shall sell or otherwise dispose of its capital stock or transact any business within this state, or acquire, hold or dispose of property real or personal within this state until such corporation shall have filed in the office of the secretary of state a copy of its articles of incorporation, and amendments if any, together with

a certificate to the effect that the charter of the corporation has not been cancelled and that it is engaged in active business under its charter, both of which copy of articles and certificate shall be certified to by the secretary of state of the state in which such corporation was incorporated or by the officer authorized to issue charters to such corporation (or if incorporated in a foreign country, then by the officer authorized to issue corporation charters) and shall have complied with the provisions of this chapter; provided, that the provisions of this chapter shall not apply to corporations created for religious or charitable purposes solely nor to the holding and disposing of such real estate as may be acquired only by foreclosure or otherwise, in liquidation of mortgages or other securities by corporations which may not have complied with the provisions of this article." Comp. Laws 1913, § 5238 as amended by Laws 1915, c. 96.

Sec. 5240. "Such corporation, association or joint stock company shall by a duly executed instrument filed in the office of the secretary of state constitute and appoint the secretary of state and his successors its true and lawful attorney upon whom all process in any action or proceeding against it may be served and therein shall agree that any process which may be served upon its said attorney shall be of the same force and validity as if served upon it personally in this state and that such appointment shall continue in force irrevocable so long as any liability of the corporation, association or joint stock company remains outstanding in this state. Service upon such attorney shall be deemed sufficient service upon the corporation, association or joint stock company. Whenever process against any foreign corporation, association or joint stock company, doing business in this state, shall be served upon the secretary of state he shall forthwith mail a copy of such process, postage prepaid, and directed to such corporation, association or joint stock company at its principal place of business, or if it is a corporation, association or joint stock company of a foreign country, to its resident manager in the United States, or to any such other person as may have been previously designated by it by written notice filed in the office of the secretary of state. As a condition of valid and effectual service the plaintiff shall pay to the secretary of state at the time of the service the sum of two dollars which the plaintiff shall recover as taxable costs if he prevails in his action. The secretary of state shall keep a

858

record of all such process which shall show the time and hour of service." Comp. Laws 1913, § 5240.

Sec. 5242. "Every contract made by or on behalf of any corporation, association or joint stock company, doing business in this state, without first having complied with the provisions of § 4913, if an insurance company, or with the provisions of §§ 5238 and 5240, if other than an insurance company, shall be wholly void on behalf of such corporation, association or joint stock company and its assigns, but any contract so made in violation of the provisions of this section may be enforced against such corporation, association or joint stock company." Comp. Laws 1913, § 5242.

Evidence bearing upon the question whether plaintiff had transacted business in this state in violation of the foregoing provisions of law was adduced by both parties. The evidence on the part of the defendant consisted of the deposition of the present secretary of state, taken January 19, 1929. He testified that on August 21, 1922, the Miller Rubber Company of New York filed an affidavit in the office of the secretary of state that it had withdrawn, and then withdrew, from transacting business in North Dakota. He further testified:

Q. Have you carefully searched the records of your office respecting the papers, documents, instruments filed therein by the Miller Rubber Company of New York, a corporation?

A. I have.

Q. From the official records of your office do you find on file in your office or to have ever been filed therein any certificate to the effect that the Miller Rubber Company of New York is engaged in active business under the charter certified to by the secretary of state of New York or by any officer authorized to issue a charter to such corporation?

A. I do not find any such record on file or to have been filed in my office.

After the trial had concluded, the case was reopened and plaintiff offered in evidence a certificate dated March 6, 1924. The certificate was signed by Thomas Hall, who was secretary of state on that date, and bears the seal of his office. The genuineness of the certificate is not questioned. The certificate is made upon a printed blank form provided for use by the secretary of state for such purpose and recites:

"That the Miller Rubber Company of New York, a corporation organized and existing under the laws of the state of New York and having its principal place of business at Manhattan in the state of New York, filed in this department on the 6th day of March, 1924, an officially certified copy of its Articles of Incorporation, a proper certificate that the charter or authority of corporate existence has not been cancelled and that such corporation is engaged in active business under such charter or authority of corporate existence and an appointment of the secretary of state, attorney for service, thereby fully complying with the unrepealed parts of § 5238 of the Compiled Laws of the State of North Dakota for the year 1913, and amendments thereto, governing the transaction of business in this state by foreign corporations. Said corporation, therefore, is entitled to all rights, benefits and privileges granted by the Laws of the State of North Dakota and is also subject to all the regulations, reservations and restrictions of said laws."

At the time this certificate was offered and admitted in evidence the following proceedings were had:

Mr. Smith: (Plaintiff's counsel). At the close of this case, it having been agreed that it might be reopened for the admission of further evidence, it is stipulated between the attorneys for the plaintiff and defendant that plaintiff's exhibit "A" being Certificate of the Secretary of State under date of March 6th, 1924 authorizing the plaintiff to do business in the State of North Dakota, be admitted in evidence.

Mr. Brickner: (Defendant's counsel). To which it is agreed.

The Court: This shows that in fact the Miller Rubber Company was authorized to do business in this state at the time of the transaction in question.

Mr. Brickner: (Defendant's counsel). We don't stipulate anything of that kind.

Mr. Smith: (Plaintiff's counsel). He stipulates that the certificate may be admitted in evidence. I will state for the record; it now appears that there were two Miller Rubber Companies, one of Ohio and one of New York. The Ohio corporation was originally authorized to do business here and then withdrew, and then the Miller Rubber Company of New York was authorized to do business here and with-

drew, and that certificate of withdrawal is attached to the defendant's exhibit; that was in 1922, and then in 1924 a new application was filed, and plaintiff's exhibit "A" was issued to the plaintiff.

The Court: It is still in full force and effect.

Mr. Brickner: (Defendant's counsel). We take the position they cannot go beyond this certificate.

After due consideration of all the evidence the trial court made its finding that the plaintiff is a foreign corporation organized and existing under and by virtue of the laws of the state of New York and that said corporation has been and still is authorized to transact business within the state of North Dakota.

We are all agreed that this finding is not contrary to but clearly in accord with the evidence. It will be noted that the questions propounded to the present secretary of state were so framed as to elicit from him merely the statement that he failed to find among the papers, documents, and instruments filed in his office by the Miller Rubber Company, "any certificate to the effect that the Miller Rubber Company of New York is engaged in active business under the charter certified to by the secretary of state of New York or by any officer authorized to issue a charter to such corporation."

The question propounded to the present secretary of state assumes that there was on file in his office certain papers, documents or instruments filed therein by the Miller Rubber Company of New York. There is no denial by the secretary of state that the papers so filed included a duly certified copy of the articles of incorporation and amendments thereto, if any, and a certificate to the effect that the charter of the corporation has not been cancelled; as well as an instrument appointing the secretary of state and his successors the true and lawful attorney of the Miller Rubber Company upon whom process may be served. In short, the question assumes that the corporation had fully complied with the laws of this state and filed every paper required to be filed with the secretary of state with the single exception of a certificate of the kind and to the effect specified in the question. It will be noted that the question does not inquire as to what, if any, certificate or certificates had been filed but it limits the inquiry as to whether there was on file a certificate executed by the secretary of state of New

York or by any officer authorized to issue a charter to such corporation "to the effect that the Miller Rubber Company of New York is engaged in active business under the charter." Obviously the question asks the secretary of state not merely to state a fact, as to the contents of a certificate but also requires him to give his legal conclusion as to what person is authorized under the laws of New York to issue a charter to a corporation. The primary purpose sought to be accomplished by our laws requiring foreign corporations, in order to do business in this state, to qualify by filing certified copies of the articles of incorporation and an appointment of the secretary of state as an attorney upon whom all process may be served, is to furnish to the residents of this state easily accessible evidence of the existence of such corporations and to provide means whereby redress may be sought against such corporations in the state courts upon any claims that may arise out of business transactions had by them in this state. State use of Hart-Parr Co. v. Robb-Lawrence Co. 15 N. D. 55, 60, 106 N. W. 406; Commercial Mut. Acci. Co. v. Davis, 213 U. S. 245, 253, 53 L. ed. 782, 786, 29 Sup. Ct. Rep. 445; Lafayette Ins. Co. v. French, 18 How. 404–407, 15 L. ed. 451–453.

As said, there is no contention that the plaintiff company had not, in good faith, sought to comply with the laws of this state relating to the qualification of foreign corporations for doing business in this state. There is no contention it had not duly appointed the secretary of state its attorney upon whom process might be served or that it had not filed a duly certified copy of its articles of incorporation together with the amendments thereto, if any, as well as a certificate showing that its charter had not been cancelled. And it will be noted that in the certificate of the secretary of state dated March 6, 1924, which was admitted in evidence without objection, it is stated that there was on that day filed in the office of the secretary of state of this state, a certificate that the charter or authority of corporate existence had not been cancelled.

In short, so far as the evidence in this case goes (giving to the answers of the present secretary of state full force and effect) it is susceptible of only one construction and that is that the plaintiff company, in good faith, sought to comply with the laws of this state and has substantially complied with the laws of this state relating to the quali-

fication of a foreign corporation to do business in this state; nor is it shown that there was not a literal compliance with such laws, and the trial court was fuly justified in finding, as it did, that the plaintiff has complied with the laws of this state prescribing the mode in which foreign corporations must qualify in order to transact business within this state.

(2). It is next contended that the notes are invalid and unenforcible for the reason that they were given in payment of certain automobile tires, sold by the plaintiff to the defendant within the state of North Dakota in violation of §§ 9975 and 9976, Comp. Laws 1913. These sections read:

"Sec. 9975. No person shall sell, or offer for sale, any rubber tires or casings for use on motor vehicles unless the name of the manufacturer and the year in which the same was made are conspicuously and permanently marked thereon in raised type cast with the tire or casing.

"Sec. 9976. Any person who violates any of the provisions of this act shall be guilty of a misdemeanor."

The evidence shows that in January, 1926 the defendant Holes and Leonard George and Paul Frederick became associated, and entered into business in Fargo, North Dakota, as copartners under the name of Miller Tire Company; that such copartnership engaged in. the business of selling automobile tires, tubes and other accessories and also in the automobile repair business. The firm handled products manufactured by the plaintiff company. The defendant Holes was called by the plaintiff for cross-examination under the statute. He testified that he executed the notes in suit on or about the date that they bear and that the notes have not been paid. This is the only testimony given by the plaintiff. The evidence adduced by the defendant as regards the business relations between the plaintiff company and the copartnership, the alleged violation of the laws of this state relating to the sale of tires, and the consideration for, and the circumstances under which, the notes in suit were executed, consist of the testimony of Frederick, one of the other two members of the partnership. Frederick testified that the copartnership was formed in January, 1926; that it consisted of three persons, namely, the defendant Holes, and Leonard George and Paul Frederick; that there was a written contract between the plaintiff and the Miller Tire Company (but the contract was not introduced in

evidence and there is nothing to show what its terms and provisions were). Frederick further testified that the plaintiff company had a warehouse in Fargo and that the tires in this warehouse, and possibly a few in the store operated by the Miller Tire Company, belonged to the plaintiff. As regards the conduct of the business and the failure of the tires to comply with § 9975, supra, he testified:

Q. In replenishing that stock, what did you do? A. We ordered the tires from Minneapolis to replenish the stock.

Q. From where were they shipped? A. Minneapolis.

Q. What was done with them when they came to Fargo? A. They were stored in the warehouse, in the regular routine.

Q. You conducted here what was known as a warehouse? A. Yes sir.

Q. For the Miller Rubber Company of New York? A. Yes sir.

. . .

Q. In making adjustments, could you tell whether the tires were old tires or new? A. Yes sir.

Q. By the date of manufacture? A. Yes sir, and day.

Q. Were they marked plainly so any person could read it? A. No sir.

Q. You say you did $40,000 worth of tire business there? A. No, that was shipped on the territory.

Q. There is no doubt in your mind that these were made by the Miller Rubber Company? A. The tires?

Q. Yes. A. No.

Q. You, of course had the opportunity to inspect this personally, did you? A. What?

Q. You had opportunity to inspect this personally? A. Yes, it was necessary.

Q. And these were tires that were made somewhat prior, of course to shipment, were they? A. Yes sir.

Q. But they were all new stock? A. Yes sir, absolutely.

Q. They weren't old or used tires? A. Yes sir.

Q. These were called the first class manufactured stock as they came from the factory? A. Yes sir.

Q. And you state definitely there was no doubt of the year of manufacture that the maker put on the individual tire casing? A. No.

Q. And cast on each tire in raised type, were they? A. Yes.

Q. Yes or no? A. You asked me if they were stamped on the tires in type. Yes, they were.

Q. That was a code? A. Code and serial number.

Q. Did they furnish you with the code? A. Furnished us with the code?

Q. Yes? A. Yes sir.

Q. And that code wasn't furnished to the public in general? A. No sir.

Q. You could also tell approximately the time of manufacture by the serial number? A. Yes sir, within six months.

Q. And that serial number of course wasn't known to the public in general? A. Yes.

Q. I mean as to the date of manufacture? A. No.

As regards the circumstances under which the notes in suit were executed and the consideration therefor, Frederick testified:

Q. Now Mr. Frederick, you and a man by the name of George and Mr. Holes, the defendant in this action, were in partnership in this Miller Tire Company? A. Yes sir.

Q. Was that the name they did business under, the Miller Tire Company? A. Miller Tire Company.

Q. Now, you sold tires? A. Yes sir.

Q. That was your business? A. Yes sir.

Q. And as you stated, George and Holes were your partners? A. Yes sir.

Q. Now on or about March 13th, 1928, the date the notes were given, known here as plaintiff's exhibits two to six, you and Mr. Holes and Mr. George split up, did you? A. Yes.

Q. Your partnership was dissolved? A. Yes sir.

Q. On or about that date, is that right? A. Yes sir.

Q. And these notes were given, that are known here as plaintiff's exhibits one to six. You knew these notes had been given, did you? A. Yes sir.

Q. By Mr. Holes? A. Yes sir.

Q. In this dissolution of the partnership, Mr. Holes assumed all the liability of the Miller Rubber Company? A. All the liabilities of the Miller Tire Company.

Q. That is, he took over the indebtedness of the partnership to the Miller Rubber Company of New York? A. Yes sir.

Q. And in the dissolution agreement, that is when you dissolved this partnership, that was the understanding that you had with Mr. Holes? A. Yes sir.

Q. That he should assume that liability and pay that indebtedness? A. Yes sir.

Q. And the notes we have here were given by Holes to the Miller Rubber Company in payment of that indebtedness? A. Yes sir.

Q. Now this amount—I don't know just what the total is—These notes totalled $3,200? Now what does that represent, that $3,200? A. —.

Q. Maybe you don't understand me? A. That represents tires, tubes and accessories that were shipped in here from Minneapolis, Minnesota or Akron, Ohio, to the Miller Tire Company.

Q. By the Miller Rubber Company? A. Yes sir.

Q. Can you say, Mr. Frederick, that every piece of merchandise whether tires, tubes and accessories was sold, and that this $3,200 represents each and every piece of that shipped in here from outside the State of North Dakota? A. Yes sir.

Q. Either from Minneapolis, Minnesota or Akron, Ohio? A. I will take that back; not every piece. Of course in the first place it was shipped into the State of North Dakota.

Q. That is what I mean? A. Yes sir.

Q. That is, the Miller Rubber Company has no manufacturing plant in North Dakota? A. No sir.

Q. I am simply getting at this: All of these products that were bought and which represents the purchase price, were products of the Miller Rubber Company? A. Yes sir.

Q. Were rubber products, tires, tubes and accessories manufactured by the Miller Rubber Company? A. Yes sir.

.Q. And you are familiar with the fact, of course, their plant is at Akron, Ohio? A. Yes sir.

Q. And their branch office is at Minneapolis, and I suppose they have a warehouse at Minneapolis? A. They have a branch there.

Q. And every tire, tube and accessory would be shipped into the State of North Dakota from some place outside the State? A. Yes sir.

Q. Most of it from Minneapolis and from Akron? A. Yes sir, unless it was transferred from some other warehouse."

It will be noted that the testimony of Frederick is to the effect that the plaintiff sold and delivered to the Miller Tire Company not only tires but tubes and other automobile accessories. It will be noted also that the testimony shows that the Miller Tire Company handled a large amount of goods of the plaintiff. Upon the record before us it is impossible to say what amount of the business represented tires and what part tubes and accessories. The testimony of Frederick is also to the effect that the notes in suit were executed and delivered by Holes to the plaintiff under an agreement between Holes and his two co-partners upon the dissolution of the copartnership whereby Holes agreed to pay this sum for the partnership.

The trial court found as a fact that at the time of the execution and delivery of the notes in suit the defendant, together with Leonard George and Paul Frederick were jointly and severally indebted to the plaintiff and said notes were executed and delivered "by the defendant to the plaintiff upon the consideration that the time for payment of said obligation be extended and that the other persons, jointly indebted with the defendant, be released from liability; that, in accordance with said arrangement, the copartnership, of which the defendant was a member, was dissolved and the copartnership was released from liability and the notes of the defendant were substituted in lieu thereof with an extension of the time for payment." This finding of the trial court is clearly in accord with the evidence, and renders it unnecessary for us to determine whether a person who sells tires in this state which fail to comply with the provisions of § 9975 supra, is precluded from recovering the purchase price. There are authorities tending to sustain the view that under such statute the purchase price may not be recovered. Other cases are to the contrary effect and hold that the penalty provided in the statute is exclusive and that the vendor, though subject to the penalty of the statute is not precluded from recovering

the purchase price. See Larned v. Andrews, 106 Mass. 435, 8 Am. Rep. 346; Aiken v. Blaisdell, 41 Vt. 655; De Mers v. Daniels, 39 Minn. 158, 39 N. W. 98; Strong v. Darling, 9 Ohio, 201; Pangborn v. Westlake, 36 Iowa, 546; Rahter v. First Nat. Bank, 92 Pa. 393. See also Grove v. Great Northern Loan Co. 17 N. D. 352, 359, 138 Am. St. Rep. 707, 116 N. W. 345.

It follows from what has been said that the judgment appealed from is correct. It must be and is affirmed.

BURKE, Ch. J., and BIRDZELL, NUESSLE, and BURR, J., concur.