40  224
88  361

† WHITNEY *&* als. *versus* SLAYTON.

*Parol* evidence, to change or vary the meaning of a contract set forth in the condition of a bond, is inadmissible.

No consideration is required to be stated in a contract under *seal.*

A bond binding the obligor not to exercise a trade is void, but where the inhibition is for a limited time, and within certain limits, it may be obligatory.

And the *exceptions* to the common law rule should receive a *liberal* construction.

Thus, where the defendant sold plaintiffs an iron foundry, in Calais, and agreed not to engage in the business of iron casting within sixty miles of that place for ten years, it not being a part of the State densely inhabited, and containing but few places of much business ; *it was held,* that the agreement was binding.

And such bond is broken, if the obligor become a stockholder in an incorporated company, carrying on that business within those limits, or an employee of such corporation.

In a suit on such a bond, damages are recoverable, sustained even after the date of the writ up to the time of *trial.*

ON EXCEPTIONS fron *Nisi Prius,* APPLETON J., presiding. DEBT, on a bond.

On the 21st day of Feb. 1852, defendant executed a bond to plaintiff of $5000, with this condition : — " that whereas the above named Slayton has this day sold out his foundry establishment in Calais, to the parties above named, and has agreed not to engage in the business of iron casting within sixty miles of Calais for the term of ten years from this date; now if the said Slayton shall well and truly fulfil his said agreement, and not engage in said business within said space in said time, then the above bond to be void, otherwise to remain in full force."

The plaintiff's writ, dated April 16, 1853, alleged that defendant had engaged in said business at said Calais on the first day of April, and from that time to the date of the writ, and had erected a large establishment for carrying on the foundry business at Calais, in which he was engaged in violation of said agreement.

The general issue was pleaded, and a brief statement

filed, alleging that no consideration was paid for said agreement, and denying that defendant had been engaged in the business of iron casting, and that plaintiffs had suffered any damage by reason of any such business being carried on.

This action was tried at the Oct. term, 1854, and evidence was received tending to show damages from the alleged breach of the bond, after the date of the writ, against the objection of defendant.

There was evidence introduced by plaintiffs tending to show that defendant, in the fall following the making of his bond, erected a foundry and machine shop and some other buildings in Calais, and in March, 1853, sold the same to an incorporated company — and that he held stock in that company, and that he was employed as a foreman in carrying on the business; and that plaintiffs' business was lessened in consequence of the rival establishment; but on the latter point the testimony was contradictory.

The defendant offered to prove that the bond in suit was not given, or agreed to be given, until after the completion of the trade, and sale of the works, and the signing of the contract, and was given without any consideration, for the purpose of influencing the amount of the damages; but the Court rejected the same.

The following instructions were requested by defendant:

1. That the jury should not take into consideration any evidence, after the date of the writ, of any injury, real or supposed, suffered after the commencement of the action.

2. That the bond was void, and contrary to law, upon the ground that it covered too large a space of the territory of the State.

3. That defendant, being in the employ of an incorporated company, was not " engaging in the iron casting business," within the true sense and intention of the parties as expressed in the bond.

These requests were refused, and the presiding Judge instructed the jury that the bond was valid and binding upon the parties; — *that,* if defendant took any portion of

the stock of the corporation, and was interested in the same from the first day of April to the time of trial, or any part of that time, it was engaging in the iron casting business, within the meaning of the bond; — *that*, if he engaged in the service and employ of said incorporated company, and continued therein, it was engaging in the iron casting business within the meaning of the bond; — *that*, if they found defendant had engaged in the iron casting business, they might assess damages severally, up to the date of the writ, and up to the time of trial.

*That* in assessing damages, they should consider how far the plaintiffs' profits had been diminished by defendant's skill or business capacity and capital, either as principal or servant; — *that* they should not hold him responsible for the capital of others, but only so far as plaintiffs' profits had been diminished by the competition of defendant's capital in the particular business of iron casting.

The jury returned a verdict for plaintiffs, and assessed damages up to the date of the writ, of one dollar, and for damages to the day of trial at $350,00. Defendant excepted.

It was agreed that if the instructions were erroneous, a new trial is to be granted, or judgment to be rendered for such sum as the legal rights of the parties may require.

*Pike and T. J. D. Fuller*, for defendant.

1. The parol evidence, offered and excluded, ought to have been received. Contracts of this description form an exception to the general rule, and it makes no difference whether under seal or not. 6 Pick. 206; 21 Wend. 158. It was admissible to show the inadequacy of the consideration and to affect the matter of damages.

2. The bond is void, upon the ground that its conditions are in restraint of trade. 8 Mass. 228; 3 Pick. 159; 19 Pick. 54; 7 Bing. 330; 1 Smith's Lead. Cases, 446; 21 Wend. 158.

3. An incorporated company, employing the defendant as

a mere laborer, was not engaging him im the casting business within the sense and meaning of the bond.

4. Damages can only be assessed to the date of the writ. 4 Pick. 106; 6 Pick. 236.

*Granger*, for plaintiffs.

1. The bond was valid. Mere extent of territory embraced in a contract of this description is of little consequence. The reasonableness of the contract depends, mainly, upon other elements, the principal one being the amount of business. There is not and never has been any iron foundry out of Calais within the inhibited limits. Calais being at the extreme border of the State, the inhibited limits give only a radius of thirty miles.

There is no evidence that defendant was prejudiced by the extent of territory in the contract.

A restraint of this kind is not prejudicial to the public interest. The public suffer oftener from excess than lack of competition.

2. The contract precludes the defendant from being a servant of a corporation engaged in this business. The language used is comprehensive, and excludes him either as principal, servant or agent. *Turner* v. *Evans*, 75 Com. Law, 512.

3. Nor does it allow defendant to own the stock of a corporation engaged in the business. If he might own any, he could the whole. The stipulation was not to engage in that business.

4. The plaintiffs were entitled to recover the damages to the time of trial. R. S., c. 115, § 78; *Gardner* v. *Niles*, 16 Maine, 279; *Gennings* v. *Norton*, 35 Maine, 308; *Lewey* v. *Walker*, 5 Verm. 181; *Waldo* v. *Fobes*, 1 Mass. 10. This provision is for the benefit of defendant, to prevent a multiplicity of suits. 1 Smith's Lead. Cases, 288; 1 Story's Eq. 289; *Perkins* v. *Lyman*, 9 Mass. 522; *Pierce* v. *Fuller*, 8 Mass. 223; *Burne* v. *Gray*, 4 East, 190; Chitty on Cont. 666; 2 Kent's Com. 590; *Noble* v. *Bates*, 7 Cowen,

307; *Smith* v. *Smith*, 4 Wend. 468; *Turner* v. *Evans*, 75 Com. Law, 512.

TENNEY, J. — The contract mentioned in the condition of the bond declared on is, that the defendant having sold out his foundry established in Calais, to the plaintiffs, had agreed not to engage in the business of iron casting, within sixty miles of Calais, for the term of ten years from the date of the bond. For the alleged breach of this contract, damages are claimed. Evidence was introduced, which satisfied the jury under the rulings and instructions of the Court, that the bond had been broken before the commencement of the action; and by the direction of the Court, damages to the time of the trial, as well as to the time of the institution of the suit, were severally assessed. The case is now brought before the Court on exceptions to the ruling and the instructions of the presiding Judge, and the omission to instruct agreeably to the request of the defendant.

The defendant offered to prove, that the bond in suit was not given, or agreed to be given, until after the completion of the trade and sale of the works, and the signing of the same. The language in the condition of the bond is, "that whereas the above named Slayton has this day sold out his foundry establishment in Calais to the parties above named, and has agreed not to engage in the business of iron casting within sixty miles of Calais, for the term of ten years from this date, now," &c. This shows that the sale, and the agreement not to engage in the same business, were parts of the same transaction, and the evidence thereof was intended to be the written contract in the bond, which being under seal, is proof itself of a consideration. The evidence offered would alter and control, in its tendency, the effect of the written contract, and on every principle was inadmissible.

The Judge instructed the jury, that the bond was valid and binding on the parties. It is insisted, that the contract covering so large an extent of territory as that within sixty

miles of Calais, is in restraint of trade, and therefore void.

It was an ancient rule of the common law, which was regarded as entirely settled, that all bonds in restraint of trade were void. The rigor of the rule as first established, has been materially relaxed, but by no means abolished. A distinction between a general and a limited restraint of trade, was early introduced, and has continued. A contract not to use a certain trade in a particular place, was held in *Broad* v. *Jollyfe*, Cro. Jac. 596, to be an exception to the general rule. And the case of *Mitchel* v. *Reynolds*, 1 P. Wms. 181, treats the distinction between limited and general trades, as the well settled doctrine. The reasons given by PARKER, C. J., in *Mitchel* v. *Reynolds*, why restraints of trade are not allowed, are the mischief which may arise to the party, by the loss of his livelihood; to the public, by depriving it of a useful member; the great abuses to which these voluntary restraints are liable; because in a great many instances, they can be of no use to the obligee, for what does it signify to a tradesman in London, what another does at Newcastle. Another reason given by the same Judge, was in favor of these contracts, that there may happen instances, wherein they may be useful and beneficial, as to prevent a town from being overstocked with a particular trade.

In *Homer* v. *Ashford*, 3 Bing. 322, it is said by BEST, J., " The first object of the law is to promote the public interest; and the second to preserve the rights of individuals. The law will not permit any one to restrain himself from doing what the public welfare, and his own interest, require that he should do. Any deed, therefore, by which a person binds himself not to employ his talents, his industry or his capital, in any useful undertaking, in the *kingdom*, would be void, because no good reason can be imagined, for any person's imposing such a restraint on himself. But it may often happen, that individual interest and general convenience render engagements not to carry on trade, or to act

in a profession, in a particular place, proper." And an instance is mentioned. "Manufactures or dealings cannot be carried on to any great extent, without the assistance of agents and servants. A merchant or manufacturer would soon find a rival, in every one of his servants, if he could not prevent them from using, to his prejudice, the knowledge acquired in his employ."

In *Nobles* v. *Bates*, 7 Cowen, 307, SUTHERLAND, J., in the opinion of the Court, where he refers to the decisions of English cases on the subject, says, " a bond or promise, upon good consideration, not to exercise a trade for a limited time, at a particular place, or within a particular parish, is good. But when it is general, not to exercise a trade *throughout the kingdom*, it is bad."

"Agreements to restrain trade in particular places, founded on a reasonable consideration, are valid in law, and may be enforced." *Stearns* v. *Barrett*, 1 Pick. 443.

The application of the principles of the distinction recognized between a general and a limited restraint of trade, to particular cases, may be difficult. It seems to be well established in England, that a contract, by which a person binds himself not to employ his talents, his industry, or his capital in any useful undertaking *in the kingdom*, would be void. And the same doctrine has been held in this country. *Alger* v. *Thacher*, 19 Pick. 51. In this case, it is said by MORTON, J., in the opinion of the Court, " as to what shall be deemed a reasonable limitation, there is, and from the nature of the case, can be, no definite rule. It must depend on the circumstances of each particular case, and the good sense and sound discretion of the tribunal which may have the case to settle. In *Palmer & al.* v. *Stebbins*, 3 Pick. 188, WILDE, J., says, " it must, therefore, be decided on general principles, rather than by express authority. Whether competition in trade be useful to the public or otherwise, will depend on circumstances. I am rather inclined to believe, that in this country at least, more evil than good is to be apprehended from encouraging competition among rival tradesmen, or

men engaged in commercial concerns. There is a tendency, I think, to overdo trade, and such is the enterprise and activity of our citizens, that small discouragements will have no injurious effect, in checking in some degree, a spirit of competition."

In this country, particularly, such is the facility with which persons are enabled, without capital, to embark in various enterprises, and such the desire to try experiments therein, that it often turns out, when these experiments have been successful, in some of these undertakings, others will enter into them in such numbers that ruin to most of them so engaged is the consequence. Hence those who retire, and for a proper consideration contract with others not to engage in any particular business for a limited time, and in a particular place, have often, if not generally, been the successful party. This, then, is not the country, or the time, when it is expedient to enforce rigorously the ancient common law rule, and restrict the exceptions to narrow limits, but rather to give the latter a liberal construction.

The plaintiffs were the purchasers from the defendant, of an iron foundry in Calais, according to the evidence in the case, of a capacity to carry on a very considerable business. The wants of that community might ordinarily be expected to be supplied by one such establishment at that place; and when the plaintiffs entered into the business undertaken, their prospects would probably be much obscured by a rival establishment, having in its service, the defendant, with his knowledge of the business, and acquaintance with those who would otherwise be patrons of the foundry which they had purchased. And when it is considered, that much of the country, within the extent of sixty miles of Calais, is not densely inhabited, and but few places of considerable business therein, the contract cannot be regarded as one, so in restraint of trade during its continuance, as to be void.

The defendant agreed with the plaintiffs not to engage in the business of *iron casting* within sixty miles of Calais, for the term of ten years. "The business of iron casting"

would embrace that which should be done, by an incorporated company, as well as by individuals; and if the defendant was interested as a stockholder in such corporation, it cannot be doubted, that he was engaged in the business of iron casting within the meaning of the contract. This would put him most emphatically in a position to carry out extensively, the very objects, which it must have been the intention of the parties to prevent; and his being in the service of the corporation, carrying on the business, was alike a violation of the contract.

Other instructions were given to the jury, which do not seem to be relied upon in the argument, as being erroneous, and not being perceived to be so, have not been here discussed.

The verdict under the instructions, showing a breach of the bond, before the commencement of the suit, judgment must be rendered for the penal sum, and execution will issue for the damages sustained up to the time of the trial. This the jury have found according to the statute of 1842, c. 31, § 9. *Hathaway* v. *Crosby*, 5 Shepl. 448 : *Burbank* v. *Berry*, 22 Maine, 483.        *Judgment on the verdict.*