Mitchell v. Branham.

---

MITCHELL, Respondent, v. BRANHAM, Appellant.

St. Louis Court of Appeals, February 16, 1904.

1. **STATUTE OF FRAUDS: Performance on One Side.** An oral contract, which is not to be wholly performed within a year, is taken out of the statute of frauds when it is entirely performed on one side.

2. **LIQUOR SELLING: Public Policy.** Liquor selling is made a legitimate occupation, if the statutes are compiled with; and contracts in relation thereto are not void as in contravention of public policy, but are enforceable as any other class of contracts.

3. **CONTRACTS: Restraint of Trade.** A contract, whereby a person agrees for a valuable consideration not to carry on a business in a designated locality for a definite length of time, is not a contract in restraint of trade, but binding upon the promisor.

4. **SALES: Unlawful Business: Incidental Violation of Law.** Where the vendor of a saloon fixtures and good will, agreed as part of the consideration of the sale to abstain from the saloon business in that locality for a given time, the contract was not void because the sale included an assignment of the vendor's license and was followed by a continuance of the business by the vendee under the vendor's license until that expired, before taking out a license of his own, where it appears that there was no intention to violate the law; the contract was not necessarily void because its performance may have led incidentally to a violation of the law, if such violation was not its intention or necessary consequence.

5. **DRAMSHOPS: Contracts Concerning Illegal Business.** Unlicensed sales of liquor, and other contracts regarding intoxicating liquors, which contravene the provisions of the penal statutes, are obnoxious to the law, and a party to such a contract has no remedy for a breach of it.

6. **SALES: Dramshops: Contract by Vendor to Refrain From Business: Conducting Illegal Business.** In an action by the vendee of a saloon business against his vendor to recover damages caused by the latter's violation of his contract to refrain from engaging in the same business at the same place within a given time, the plaintiff can not recover for the loss of profits, caused by the defendant's breach of the contract, during the time the plaintiff was conducting his business without a license.

Appeal from New Madrid Circuit Court.—*Hon. H. C. Riley*, Judge.

REVERSED AND REMANDED.

*Lawrence Fisher, H. C. O'Bryan* and *Robert Rutledge* for appellant.

(1) The court erred in overruling the objections of the defendant to the introduction of any testimony because the petition of plaintiff failed to state a cause of action. The sale of intoxicating liquors is by law illegal, and where a contract conflicts with the law and morals of the time and contravenes an established interest of society, it is void as being against public policy. The petition on its face discloses the illegal and immoral nature

of the contract, and that such contract, even had it been made, was or would have been void, and the petition did not state a cause of action, and defendant's objection should have been sustained.    Turley v. Edwards, 18 Mo. App. 676; Austin v. State, 10 Mo. 591; Peltz v. Long, 40 Mo. 533; Sumner v. Sumner, 54 Mo. 340.    (2) Plaintiff's petition did not state a cause of action, and this objection is never waived and is not cured even by a verdict and judgment.    Brown v. Shrock, 27 Mo. App. 351.    (3)    If illegal transactions enter into and constitute a part of the contract they vitiate the whole contract, and there can be no recovery unless the illegal part can be separated from the other portion, or items of the contract, and under the pleadings and proof this instruction should not have been given.    It is not supported by the petition.    Pardridge v. Cutler, 104 Ill. App. 89; Bick v. Seal, 45 Mo. App. 475.    (4)    Under the three grounds set up in the petition the alleged contract was no part of the sale of the property, and clearly fell under the statute of frauds.    R. S. 1899, sec. 3418; Attaway v. Bank, 93 Mo. 485; Harrison v. McCluney, 32 Mo. App. 481.    (5)    Both Mitchell and Brewer testified that Mitchell operated the saloon under the Branham license from September 17, 1901, to November 4, 1901, which was in violation of law, and even if Branham had made such contract, and aside from the contention that such contract could under any circumstances have been legal, and even if the Sul Thompson saloon was opened across the street on October 5, 1901, this instruction certainly declared the law and should have been given.    R. S. 1899, sec. 2992; State v. Downing, 22 Mo. App. 504.    (6)    Branham could not contract to bargain and barter the appetites and morals of the citizens peculiar to that locality, and could not contract to promote the dramshop business of Mitchell that way. Austin v. State, 10 Mo. 591; State ex rel. Troll v. Hudson, 78 Mo. 302; State v. Hudson, 13 Mo. App. 61; Friend v. Porter, 50 Mo. App. 89.    (7)    It is an undis-

puted principle that an action will not lie to recover damages if to do so the plaintiff relies upon or requires aid from an illegal or immoral transaction, or depends upon such a contract. Welch v. Wesson, 6 Gray 505.

*J. V. Conran* for respondent.

(1) No illegality appearing from the contract in this cause or from the evidence necessary to prove it but upon an extraneous fact. The defense was, new matter must have been pleaded in order to be available. St. Louis A. & M. Ass'n v. Delano, 108 Mo. 217; Munro v. Adler, 86 Mo. 445; School District v. Sheidley, 138 Mo. 690. (2) Appellant urges that the contract is in restraint of trade and opposed to public policy. It is now the rule that agreements in restriction of trade will be upheld when the restriction does not go beyond some particular locality, is founded on a sufficient consideration and is limited to time, place and person. Millinckrodt Chemical Works v. Nemich, 83 Mo. App. 6; Gordon v. Mansfield, 84 Mo. App. 367. (3) It is contended that respondent operated under the Branham license contrary to law and that that fact vitiates the contract. The Branham license was no part of the contract. A party seeking to recover on contract can not be defeated from recovery by reason of illegality in his former conduct when he can make out his cause independently of his illegal conduct. Roselle v. Beckman, 134 Mo. 380; Karum M. P. Co. v. Wayland, 81 Mo. App. 305.

GOODE, J.—In 1901 the appellant was conducting a saloon in the town of Portageville, in New Madrid county, but in September of that year he sold his building, saloon, fixtures and good-will to the respondent, and according to the testimony of the latter and other witnesses, agreed to abstain from the saloon business in that town for three years, and to use his influence to

throw custom to the respondent. The consideration paid by Mitchell was upwards of $2,300 and there is much testimony to show that a good part of the price was intended to compensate the appellant for refraining from competing with the respondent. The trade was made on September 17, and the purchase money fully paid by Mitchell; yet on October 5, Branham engaged in the saloon business, as he does not deny, in the name of Sul Thompson that is to say, Branham furnished the money and got Thompson to take out a license; but there was proof that the business was Branham's. After the saloon had been conducted that way for six months, Branham petitioned for a license in his own name. This action is for damages and was brought on the agreement of Branham to keep out of the saloon business for three years and throw his influence in favor of Mitchell.

The evidence shows that at the time of the sale of Branham's saloon and fixtures to Mitchell, the former agreed to sign a written contract stipulating that he would refrain from competing with Mitchell for the period stated; but that after he had been paid his money, he refused to sign such an agreement.

The very great weight of the evidence supports Mitchell's version of the controversy, which, indeed, was not denied positively by Branham himself while on the witness stand.

Several defenses are relied on which will be taken up and disposed of consecutively. One is, that the agreement was not to be performed within a year, and not having been reduced to writing is, therefore, void. But it was entirely performed on the part of Mitchell, as the evidence shows, and his full performance suffices to take it out of the statute of frauds. Bless v. Jenkins, 129 Mo. 647.

It is said the sale of intoxicating liquors, or the dramshop business, is opposed to sound morals and public policy—is an occupation tolerated under restrictions and penalties by the law, but discouraged; and that,

therefore, the contract between Mitchell and Branham, which furnishes the subject-matter of this action, is so obnoxious to the law that it will not be enforced by a court. The theory of this defense, as we understand it, is that Branham's contract to promote Mitchell's dramshop business tended to impair the morals of the community, and for that reason will be refused legal recognition. If the State was solicitous about the morals of the people and discouraged liquor selling, to the extent assumed, it would be a good answer to the argument of appellant's counsel that Branham bound himself to stay out of the saloon business; an agreement that tended to keep down the liquor traffic in the town of Portageville, and thereby subserve the interest of good morals. If saloons are of deleterious influence, the town, presumptively, would be better off with one than with two, and, therefore, Branham's contract with Mitchell was in line with public policy, if the policy of the State is as asserted by appellant. But running a dramshop is a legitimate occupation if the statutes of the State are complied with by the proprietor; and we have not before heard the doctrine advanced that contracts in relation to a licensed liquor traffic are void as in contravention of public policy. They are as enforceable as any other class of contracts. Of course, if an agreement was made in violation of the law, about this or any matter, it would be treated as a nullity; but the law does not prevent Mitchell from conducting a saloon in Portageville, or require Branham to conduct one, and the latter, therefore, infringed neither a statute nor a rule of State policy when he covenanted that he would not keep a saloon there.

The illegality of the agreement is pressed from another side, to-wit; from the premise that it was in restraint of trade and as such against public policy. There is no strength in this position; for a person may bind himself by a promise, for a valuable consideration, not to carry on a business in a designated locality, or within

such reasonable limits as may be necessary to protect the promisee. Contracts against pursuing an avocation are not, legally speaking, in restraint of trade unless they are general in their nature; in which case they have been denounced as hampering a citizen in his means of obtaining a livelihood and promoting monopoly. But the agreement with which we are dealing was of local scope and perfectly valid by every decision known to us. We might aptly quote the remark of Judge Scott in dealing with a like point in Presbury v. Fisher & Bennett, 18 Mo. 50: "There is no practical man who would not smile at the conceit that the public welfare would sustain an injury by enforcing an obligation like that involved in the present case."

Without going into this propostition, which rests far beyond the reach of controversy, we will cite some apposite authorites for the reader to consult if he desires. Long v. Towl, 42 Mo. 545; Pelz v. Eichele, 62 Mo. 171; Wiggins Ferry Co. v. Railroad, 73 Mo. 389; Mallinckrodt Chem. Works v. Nemnich, 83 Mo. App. 6; Gordon v. Mansfield, 84 Mo. App. 367; Whitney v. Slayton, 40 Maine 224; Hoyt v. Holly, 39 Conn. 326; Haywood v. Young, 2 Chitty 407; Davis v. Mason, 5 T. R. 118; McClurg's appeal, 58 Pa. St. 51; Morse v. Morse, 103 Mass. 72; Leathercloth Co. v. Lorsont, L. R. 9 Eq. 395; Palmer v. Stebbins, 3 Pick. 188; and a case to which we call particular attention because it is so well considered, Kellogg v. Larkin, 56 Am. Dec. (Wis.) 164.

The contract in suit is said to have been nullified by the inclusion of an arrangement for the continuance, in disregard of the statutes, of the dramshop business by Mitchell under Branham's license until it expired. The evidence on this branch of the case consists of the statement of Mitchell on the witness stand that he continued the business under Branham's license from September 17th, when he took possession, to November 4th, when the license expired, and that the license was a part of his purchase. The law declares that the license of a

dramshop keeper shall not be assignable nor transferable. R. S. 1899, sec. 2992. And if it is true Branham agreed to transfer his unexpired license to Mitchell as part of the consideration the latter was to get for the money he paid, that agreement was void and the attempted transfer a failure. There is nothing to show that either of the parties contemplated the continuance of the business under the name of Branham for the purpose of evading the statutes, nor that it was continued that way. On the contrary Mitchell took open charge of the business and ran it in his own name. Mitchell had just come from Tennessee to Missouri, and it is a fair inference that he supposed he could acquire Branham's license and continue the business under it for the period it had to run. Agreements to do acts in violation of a criminal statute, or whose purpose is to evade the law, are unenforceable. Bick v. Seal, 45 Mo. App. 475; Buck v. Albec, 26 Vt. 184; Upton v. Haines, 55 N. H. 283; Mayor v. Lacy, 3 Ala. 618; Billon v. Allen, 46 Iowa 299; Ritchie v. Smith, 6 C. B. 462; Pearce v. Brooks, L. R. 1 Eq. 213; McKinnell v. Robinson, 3 M. & W. 442. If these parties had stipulated for the conduct of the dramshop by Mitchell in Branham's name or under the latter's license, that part of their contract would undoubtedly have been void and, in that event, might or might not have been so interwoven with the remainder as to render it entirely void. Bick v. Seal, supra; Sullivan v. Hergan, 17 R. I. 109. This is a point which the facts, as we see them, do not call on us to decide. Concealment of the change of proprietors was neither contemplated nor attempted; nor is it in proof that they agreed a new license should not be obtained. The most that can be made of the facts is that Mitchell did not obtain a dramshop license until the expiration of the one current when he purchased, and which he supposed he had acquired. By virtue of the statute he failed to acquire it; but as the contract did not provide for a continuance of the business under that license,

and as it was entirely possible and consistent with the contract for Mitchell to get a new license forthwith, the contract was not invalid as intending a breach of the law.   A contract is not necessarily void because its performance may have led   incidentally to a violation of the law, if that was not its intention or necessary consequence; that is to say, if it might have been performed consistently with its terms, in a legal mode.   St. Louis Fair Assn. v. Carmody, 151 Mo. 566; Michael v. Bacon, 49 Mo. 474; Waugh v. Morris, L. R. 8 Q. B. 202.

Mitchell's failure to procure a license is sought to be taken advantage of in another way:   It was admitted that the saloon was conducted from September 17 to November 4 under Branham's license, as Mitchell believed but, in point of law, without a license. Branham's competition opened October 5, and from that date to November 4 was against Mitchell as an unlicensed dramshop keeper.   On these facts appellant's counsel requested  an instruction which the court  refused, that the respondent could not recover damages for an injury done to his business by appellant's competition during that interval.   An instruction was given, over the objection of the appellant, that if the jury found the issues for the respondent, among other elements of damages, they should award whatever sum the evidence showed he had sustained from the falling off of sales from the date of the contract to the institution of this action—an instruction which authorized an award of damages for loss of profits  during the period between October 5 and November 4, when respondent was without a license and was, of course, doing business in violation of law.   We do not see how this ruling of the court can be upheld. Every sale that Mitchell made during that period was a criminal offense and it is a poor basis for damages that the sales made by a competitor meanwhile, prevented him from committing more offenses and realizing a profit by them.   Our statutes provide that a dramshop keeper can not recover for any sale of liquor made on

credit. R. S. 1899, sec. 2992. Without a statutory provision of that kind, a licensed dealer can recover. But the general rule of law is that unlicensed sales on credit, or other contracts regarding intoxicating liquors which contravene the provisions of penal statutes, are obnoxious to the law and that a party to such a contract has no remedy for a breach of it. Miller v. Ammon, 145 U. S. 421; Brewing Co. v. Whipple, 89 N. W. 751; Brewing Assn. v. Mason, 44 Minn. 318; Graves v. Johnson, 156 Mass. 211, 15 L. R. A. 834, and notes; Brewing Co. v. DeFrance, 91 Iowa 108; Storz v. Ginkelstein, 46 Neb. 577. Acts opposed to penal statutes and the public weal and policy are generally noticed with reference to their effect on contract obligations; but we are now considering Mitchell's conduct in keeping an unlicensed dramshop, to ascertain whether it affected his right to recover for the loss he suffered from Branham's competition while he was without a license. We have already ruled that the contract neither contemplated nor required a violation of the law, and hence was valid, even if it attempted to transfer the license. Granting that it was valid, the question left is, can Mitchell recover the loss of profits caused by Branham's breach during the time he (Mitchell) was selling intoxicants in violation of a criminal statute? It may be said that Mitchell's unlawful acts were matters between him and the State with which Branham had nothing to do, and that Branham ought not to escape payment of any loss he entailed on Mitchell by disregarding the agreement not to compete. The precise point is one on which the books are barren of authority so far as our research has disclosed; but we can not escape the conviction that, as Mitchell committed a criminal offense every time he sold liquor without a license, he ought not to be compensated for the profit he lost by Branham's preventing him from making other sales; that is, from committing other offenses. The rule of law which we deem applicable to the facts is, as stated by Lord Mansfield, that "No court will lend

its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appears to arise '*ex turpi causa*,' or from the transgression of a positive law of this country, then the court says he has no right to be assisted. It is upon that ground the court goes, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff.'' Holman v. Johnson, Cowp. 343. This principle is generally deferred to when the facts are appropriate, and enjoys the sanction of the appellate courts of this State, as it probably does of all tribunals that have had occasion to consider it. Peary v. Colvert, 22 Mo. 361; Parsons v. Randolph, 21 Mo. App. 353; Harrison v. McCluney, 32 Id. 481; Gregg v. Wyman, 4 Cush. 322; Woodman v. Hubbard, 25 N. H. 67; Welch v. Wesson, 6 Gray 505; Cranson v. Goss, 107 Mass. 439. It is adhered to both in actions of tort and of contract. There is a class of cases where the rule was held not to control the decision for a reason that, perhaps, may be sometimes more sensibly felt than it can be exactly enunciated; and the opinions in some of the cases just cited, while recognizing the general principle declared by Lord MANSFIELD, and frequently restating it in his language, have treated it as inapplicable to the facts before the court. Other decisions of that character are Waugh v. Morris, supra; Rogers v. Rogers, 171 Mass. 546; Favor v. Philbrick, 7 N. H. 326; Wood v. Railway Co., 72 N. Y. 196; Dowley v. Schiffer, 13 N. Y. Supp. 552.

In Fox v. Rogers, the defense preferred to a suit for building a drain into the defendant's house, was that the work was done in contravention of a statute and in excess of the plaintiff's license. This defense was overruled.

A like decision was given in Dowley v. Schiffer, an action on a contract to furnish electric lighting to the defendant's house, and to equip it with wires. Payment was resisted on the ground that overhead wires were

used to connect the premises with the main line and that such wires were prohibited by statute.

Perhaps the principle that divides the two classes of cases will be stated with sufficient precision for practical purposes, by saying that when the substance of a plaintiff's cause of action, whether it sounds in contract or in tort, is the performance of some unlawful act, which must be established as a ground of recovery, a court will decline to relieve him; but that redress will be granted, notwithstanding his commission of an unlawful act, if that act is not of the essence of his case.

In Dowley v. Schiffer, the law was stated thus:

"The use of unlawful means by one of the parties in performing his obligation under a contract may prevent a recovery to which performance is essential; since in that case the party seeking to recover will himself be compelled to assert his own unlawful act; and he can not successfully invoke the intervention of courts of justice to aid him in securing the profits of his transgression. In such a case the legal interdiction upon the act constituting the performance operates as a disability, and the party seeking to recover can not assert such performance in support of his claim for compensation."

It was treated by the Supreme Court of Massachusetts in Gregg v. Wyman, as follows:

"A party can not be heard to allege his own unlawful act, and if such act be one of a series of facts necessary to support the plaintiff's claim, then that claim must fail.

"The party who seeks redress in a court of justice must come with clean hands; an action which requires for its support the aid of an illegal act can not be maintained. No action, therefore, can be maintained on an illegal contract, or upon anything growing out of it. Whether a claim connected with an illegal transaction, can be maintained in a court of law, may be determined by the test whether the plaintiff must bring in the illegal transaction to aid him in making out his case."

If the matter in hand is regarded in the light of the foregoing statements of the law, it is apparent that the respondent has no standing to recover for the loss caused to his unlawful business by the appellant's competition during the month from October 5 to November 4. The essence of his demand for that time consists in the fact that he was prevented from perpetrating many misdemeanors—that is, making as many sales of liquor as, but for the appellant's breach of contract, he would have made. This is a very different complaint from what one would be for the destruction or the conversion of respondent's property; which no one could do with impunity, albeit respondent was disobeying the law; a distinction that was well drawn in Farmers, etc. Bank v. Railroad Co., 72 N. Y. 188. The cases of Fox v. Rogers and Dowley v. Schiffer, were of a similar nature—attempts to appropriate or convert the property and services of the respective plaintiffs because they had broken the law. But Branham did nothing like that; while on the other hand, Mitchell is asking for relief, not exactly for offenses committed by him, but for others he was prevented from committing, and which, if he had been let alone he would have committed, to his profit. We can not entertain such a claim, but hold that the court should have given an instruction that the jury could not award damages for loss sustained by the respondent while he was doing business without a license.

An objection was made to the sufficiency of the petition; but the reasons for that objection have been examined in discussing the points we have treated.

On another trial of this case the circuit court should be sure to give a clearly worded instruction that it devolves on the respondent to make out his case by a preponderance of the testimony. The jury were not satisfactorily instructed on that proposition at the trial.

The judgment is reversed and the cause remanded. *Bland, P. J.,* and *Reyburn, J.,* concur.