The Sedalia Board of Trade, Respondent, v. Hugh J. Brady, Appellant.

St. Louis Court of Appeals, February 7, 1899.

Illegal Contract: RIGHT OF RECOVERY. In the case at bar, the evidence adduced disproves the contract averred in the petition and establishes that another, illegal in its nature, was made. As there was no gradation in the participancy of the parties to this transaction, it follows that the law will not lend its aid to one rather than the other, but will leave them to the consequences of their own acts in attempted violation of the law governing contributions to political committees. Judge Biggs, in dissenting opinion, holds that there is nothing to show that the means employed were unlawful and that there was sufficient evidence to sustain the cause of action alleged.

*Appeal from the St. Louis City Circuit Court.*—Hon. Jacob Klein, Judge.

Reversed; Judge Biggs dissents.

BLEVINS, LYON & SWARTS and WM. H. O'BRIEN for respondent.

An inspection of the record will disclose that the allegations of the petition were substantially proven.    Mr. Brady was chairman of the Democratic committee, and the money was given him because of such fact.    He agreed to use the money, through the committee, in advertising Sedalia, and the statute imposed upon him the duty to turn the money over to the committee.    Session Acts Mo. 1893, secs. 17 and 18, p. 163.    The instructions given for plaintiff were based upon the evidence, the verdict was in accordance with the instructions, and the judgment should not be molested.    The form of the action is for money had and received by appellant for respondent's use, and upon no theory of the case could respondent be driven to a court of equity to recover the money.

T. J. ROWE for appellant.

The breach of contract proved must conform to that charged in the petition, and if the plaintiff fails to prove the breach of contract alleged against the defendant, a demurrer to the evidence should be sustained.    Haynes v. Trenton, 108 Mo. 123.    There is no substantial evidence to support the verdict and it ought to be set aside.    Instruction number 5, given at the instance of plaintiff, is erroneous because there is no evidence in the case to authorize the giving of the instruction. Instructions numbered 3 and 4, given at instance of plaintiff, are erroneous because they are not in accord with the pleadings in the case.    Upon the pleadings and proof plaintiff could not recover a part of the $1,200 given defendant on October 27, 1896.    If the $1,200 was given to defendant to expend in the furtherance of the constitutional amendment to remove the state capital from Jefferson City

to Sedalia, then the action should have been in equity for an accounting, and it is error to try same before a jury.

BOND, J.—The petition states that plaintiff is a Missouri corporation, and was desirous of securing the adoption by the people of a constitutional amendment providing for a change of the seat of government to Sedalia, which was submitted to the voters of the state at a general election held on the third of November, 1896; that defendant was then chairman of a political organization in the city of St. Louis known as the "Democratic City Central Committee, with regular officers, consisting of a chairman, secretary, and treasurer," and was soliciting contributions "to pay the legitimate expenses of the Democratic party at said election," and represented "that if plaintiff would contribute money toward the payment of the expenses of said party at said election, said committee would advertise Sedalia, and would in addition to the other work of the committee," present to the voters reasons in favor of the adoption of the proposed constitutional amendment. The petition concludes, to wit: "Plaintiff further states that on the said twenty-eighth day of October, 1896, it having faith and confidence in the integrity of the defendant and his representations aforesaid, through its agents and representatives, Edward Butler and Charles E. Yeater, gave him as a contribution to the Democratic City Central Committee, the sum of twelve hundred ($1,200) dollars, under the agreement that he would pay the same over to the proper officer of said Democratic City Central Committee, to be used by the said Democratic City Central Committee in defraying the proper and legitimate expenses of the said party during the campaign preceding the general election, so to be held on the third day of November, 1896, and to defray the expenses of advertising and presenting to the citizens of St. Louis, reasons, arguments and literature in favor of the proposed constitutional amendment

changing the seat of government from Jefferson City to Sedalia; that said defendant received said sum of twelve hundred dollars ($1,200) upon the agreement aforesaid, and for the purpose aforesaid, and in trust as aforesaid, and promised to pay the same over to the proper officer of the Democratic City Central Committee of the city of St. Louis, and to see that the same was used for the purpose aforesaid. But that defendant unmindful of his duty in the premises, failed and refused to keep his promise and agreement aforesaid, and in violation of said promise and trust, failed and refused to pay said sum of twelve hundred dollars($1,200) or any part thereof to the said Democratic City Central Committee, and refused to use said twelve hundred dollars ($1,200) for the purpose aforesaid, and secretly converted the same to his own use, and has failed, neglected and refused to account for said money to this plaintiff or to said Democratic City Central Committee, or to any other person for plaintiff or for said committee.

"Plaintiff further states that it made demand of defendant for said money on the twenty-third day of August, 1897, but that defendant refused to pay the same."

Plaintiff prayed judgment for $1,200. The answer was a general denial. On the trial the plaintiff had judgment for $401.85, from which defendant appealed, and assigns for error the refusal of the court to direct a verdict in his favor on the pleadings and evidence.

The theory of this assignment is that there was no proof of the cause of action stated in the petition; that pleading states a specific contract and alleges its breach. The cause of action stated was the reception by defendant of $1,200, contributed by plaintiff, through two of its agents, to him as chairman of the Democratic City Central Committee *"under the agreement that he would pay the same over to the proper officer of said committee."* These quoted and italicised words are taken from the above petition, where they are used

to express the specific contract made by plaintiff's agent with defendant, whose alleged breach constitutes the cause of action. An inspection of the language of the petition excludes all possible doubt as to its meaning, i. e., that defendant violated an alleged agreement made by him to *"pay over"* the sum contributed by plaintiff "to the proper officer of said Democratic City Central Committee." No other rational construction can be given to the terms employed. By the foregoing language the pleader stated a cause of action in-distinct and exact *avoidance* of the prohibitions contained in the statute regulating contributions to political committees. Session Acts of 1893, secs. 17 and 18, p. 162. This statute requires such committee to "appoint and constantly maintain a treasurer," before it can lawfully receive a contribution for election purposes, and further that every such contribution whether received by the committee or any individual member, "shall be paid over and made to pass through the hands of the treasurer of such committee, and shall be disbursed by him; and it shall be unlawful and a violation of this act for any political committee, or for any member or members of a political committee, to disburse or expend money for any of the objects or purposes mentioned in section 17 of this act, and for which such committee exists or acts, until the money so disbursed or expended shall have passed through the hands of the treasurer of such political committee." In conformity with this statute the petition under review first alleges that the committee had a *"treasurer,"* and then avers that defendant agreed to pay over the money in question "to the proper officer of said committee," thus giving the contract sued on formal legality. If the petition had alleged the reception of the money by defendant upon an agreement that *he* should disburse it, the illegality of the cause of action would have been patent on the face of the petition, and it could not have survived a demurrer, nor furnish the basis of any redress in a court of justice. As

the petition by its terms does not offend the statute, the question to be determined is, did the plaintiff adduce any substantial evidence in support of the particular contract alleged in the petition? On this point plaintiff introduced its two agents, Yeater and Butler, as witnesses. It is not pretended that the testimony of Butler in any way supports the contract alleged in the petition. On the contrary the substance of his testimony was that he received a check for $1,400 from plaintiff's other agent, Yeater, with request to use it in the interest of the capital movement; that he declined to do so, and suggested the defendant as the proper person to use the money, giving as a reason that defendant "came into contact with a great deal more of the ward politicians, etc., committeemen and others;" that plaintiff acceded to this view, whereupon Butler gave his check for $1,200 to defendant, and upon the representation by the latter that some of the committeemen were' opposed to the capital removal, he (Butler) agreed that defendant might use the money as he saw fit. Plaintiff's other agent, Yeater, testified to the payment of the money to Butler and his refusal to take charge of its distribution and his suggestion of the name of defendant, and further, that he had an interview with defendant, in which he explained that he (witness) had talked with Butler on one or two occasions about placing some money in the hands of defendant as chairman of the city committee, "to be used jointly in the interest of the constitutional amendment providing for a change of the state capital and for the benefit of the city committee;" that Butler had at first suggested that plaintiff should contribute "$100 to each ward in the city," but had finally agreed upon $50 a ward, or $1,400 in gross, and that Butler had reported to witness that this would be satisfactory to defendant. Yeater continued as follows: "He told me it was. I told him that I either had drawn or would draw a check for the amount and give it to Mr. Butler to be handed by Mr. Butler to him, and I asked him if that was satisfactory. He said

it was perfectly satisfactory. * * * I remember that he (Brady) said that the money would be used by dividing it up in the various wards of the city, about $50 to a ward, and that on the advice of some committeemen—possibly the ward committeemen, * * * and at the same time they would do whatever they could properly in the interest of the city committee. * * * I told him (Brady) that I was giving him this money because he was chairman of the committee, and because he said *he* was *favorable* to this proposition, and he said he would use it through the committee in the way I have just stated." On the cross-examination of Yeater the following appears:

"Q. To whom was he (Brady) to distribute the $1,400 ?" "A. To what person ?" "Q. Yes." "A. He didn't—the name of no person was suggested." "Q. No name was suggested either, was there ?" "A. No, sir, no name suggested except that he would advise with the ward committeemen and select as many persons as possible in each ward so as to cover the precinct as nearly as possible in the distribution of the literature." "Q. He was to give this money to different persons in the different wards ?" "A. Yes, sir, that was right, that was the first suggestion made by Colonel Butler." The foregoing testimony not only fails to support by the barest inference the alleged contract of defendant "to pay over the money to the proper officer of the committee," but it clearly and distinctly shows by the admissions of plaintiff's agent (Yeater) on cross-examination that defendant was to give the money in question *"to different persons in different wards."* In the light of this explicit admission by plaintiff's representative in making the contract with defendant, there is not a scintilla of evidence in the record tending to prove the specific contract alleged in plaintiff's petition. On the other hand, the evidence adduced by plaintiff· affirmatively discloses a contract with defendant, who was chairman of a political committee, to use the funds

placed in his hands in a method declared to be illegal by the positive language of the statute, *supra.* It is evident also that the jury did not misunderstand the nature of the agreement, as disclosed by plaintiff's witnesses, between it and the defendant, for they gave him credit in their verdict for certain sums which certain ward workers testified he had paid over to them in the interest of the capital removal. Where the evidence shows the *illegal nature* of a transaction which the pleadings or the terms of a written contract have covered with the veneer of legal formality, the party relying thereon is deprived of all right of recovery. Sumner v. Summers, 54 Mo. 340; Sprague v. Rooney, 104 Mo. 360; affirmed in Haggerty v. Ice Mfg. & Storage Co., 143 Mo. loc. cit. 247, 248; Griswold v. Waddington, 16 Johnson, 486; That a contract in violation of the requirements of a statute can neither be enforced, nor the money paid thereunder recovered, is the universal law. Downing v. Ringer, 7 Mo. side page 585, top page 292; Bick v. Seal, 45 Mo. App. 475; Connor v. Black, 119 Mo. 126. In the case of payments paid in furtherance of an illegal agreement, the courts leave the parties, if equally guilty, in the position which they placed themselves in endeavoring to evade or subvert the law, upon the *maxim in pari delicto portior est conditio defendentis et possidentis.* In the case at bar all the parties to the transaction were upon the stand. The consensus of the evidence thus adduced disproves the contract averred in the petition and establishes that another, illegal in its nature, was made, which was to be consummated by the expenditure of the money placed in the hands of the defendant for that purpose. As there was no gradation in the participancy of the parties to this transaction, it follows that the law will not lend its aid to one rather than the other, but will leave them to the consequences of their own acts in attempted violation of the law governing contributions to political committees. We are unable to discover any good reason for remanding

this cause, it will, therefore, be reversed. Judge Bland concurs in this opinion. Judge Biggs thinks the case should be reversed and remanded. His views are expressed in a dissenting opinion.

## DISSENTING OPINION BY JUDGE BIGGS.

I agree that the judgment ought to be reversed for the reason that the case was submitted and the recovery was had on a theory not warranted by the pleadings. The fifth instruction was drawn upon the theory that the money was paid to Brady as chairman of the Democratic City Central Committee, to be paid by him to the treasurer of the committee, and afterward used by the committee in the interest of the Democratic city ticket and the capital movement and the jury was told that Brady was not justified or protected in any other mode of disbursing the money and the judgment should be for the full amount. The fourth instruction proceeds upon the idea that the money was paid to Brady as an individual, and in that case the jury was instructed to return a verdict for the amount of the money which Brady had appropriated to his own use. Both instructions are right under the facts stated in each, but they present different and distinct rights of recovery. The legal obligations as to the mode and manner of the disposition of the fund under the two supposed agreements are essentially different. If the money was delivered to Brady as chairman of the committee, then under the corrupt practice act (Session Acts 1893, p. 162, sec. 118), it was his duty to pay it to the treasurer of the committee, and have it disbursed through him, and any other mode of disbursement was unlawful; whereas if the money was intrusted to him as an individual, no such duty was imposed. The jury gave Brady credit for the amounts paid by him to various ward workers, which shows that the jury determined the issues under the fourth instruction. This instruction was within the evidence, but it was outside of the

VOL. 78 app—38

pleadings, and hence a finding under it can not be upheld. The fifth instruction was the correct charge under the petition. Was there substantial evidence- to warrant the court in giving it as the only matter of difference between me and my associates? This question must be determined by the testimony of Mr. Yeater, the agent of the plaintiff. It appears from his testimony that upon his arrival in the city of St. Louis he had some talk with Edward Butler concerning the best use to make of the money, and that Butler advised him to place it in the hands of the defendant as chairman of the Democratic City Central Committee, and that at the suggestion of Butler he met defendant at Butler's office. As to what was said and done at that meeting Mr. Yeater testified as follows: "Well, I told Mr. Brady that I had talked with Butler on one or two occasions prior to that time about placing some money in his hands as chairman of the city committee, to be used jointly in the interest of the constitutional amendment providing for the change of the state capital, and for the benefit of the city committee. I told him that Mr. Butler, who had suggested in the first place that we use this money in this way, had told me that in order to obtain any efficient results we should contribute about $100 to each ward in the city. And he told me at the time that there were twenty-eight wards, and that I had told him that the board of trade had raised some money for the purpose of that campaign and did not have that amount of money to contribute. I told him also that Mr. Butler had finally agreed with me that if he, Mr. Brady, thought it proper that he, Brady, would take the sum of $1,400, or $50 a ward, and use it for the benefit of the constitutional amendment, and also for whatever benefit could be gained in the use of it for the city committee. I also told him that Mr. Butler had reported to me that Mr. Brady agreed to receive it and use it for that purpose, and I asked him if that was true. I asked him if it was satisfactory. He told me it was. I told him that I

either had drawn or would draw a check for the amount and give it to Mr. Butler to be handed by Mr. Butler to him, and I asked him if that was satisfactory. He said it was perfectly satisfactory. * * * I remember that he (Brady) said the money would be used by dividing it up in the various wards of the city, about $50 to a ward, and that on the advice of some committeemen, possibly the ward committeemen, * * * and at the same time they would do whatever they could properly in the interest of the city committee. * * * I told him (Brady) that I was giving him this money because he was *chairman of the committee,* and because he said he was favorable to this proposition, and he said he would *use it through the committee* in the way I have just stated." On the cross-examination of Mr. Yeater the following appears: "Q. To whom was he (Brady) to distribute the $1,400?" "A. To what person?" "Q. Yes." "A. He didn't—the name of no person was suggested." "Q. No name was suggested either was there?" "A. No, sir, no name suggested except that he would advise with the ward committeemen and select as many persons as possible in each ward so as to cover the precinct as nearly as possible in the distribution of the literature." "Q. He was to give this money to different persons in the different wards?" "A. Yes, sir, that was right, that was the first suggestion made by Colonel Butler." I have set out all the testimony of Mr. Yeater bearing directly on his agreement with defendant.

To entitle the plaintiff to recover under its pleadings, it was necessary that it should produce substantial evidence that the money was paid to Brady as chairman of the Democratic City Central Committee, upon an agreement either express or implied that he was to pay it to the treasurer of the committee, and that it was to be expended for the purposes for which it was donated in conformity with the requirements of the statute. In determining this question the court is required to draw every reasonable inference of fact

in favor of the plaintiff; that is every fact must be determined in its favor, though proved in but a slight degree. This rule of practice has been so often declared that it is useless to cite the cases. Now, Mr. Yeater expressly states that he paid the money to Brady as chairman of the committee under an agreement that it was *to be used through the committee.* The just and reasonable inference from this statement is, that the money was to be used through the committee in the usual way—that is that it was to be paid to the treasurer and afterward disbursed by him under the orders of the committee. This view of the evidence sustains plaintiff's case and tends to show that the arrangement between Yeater and Brady was not in violation of the statute, but in conformity to it. The other portions of Mr. Yeater's examination by no means destroy the above statement. In his cross-examination he only speaks of the persons to whom Brady proposed to pay the money, and through whom he expected to accomplish good results for the removal of the capital. All of this Brady could do in the usual and lawful way, and there is nothing in the testimony of Yeater tending to prove that unlawful or unusual means were to be resorted to. Hence I think it quite clear that the evidence was sufficient to sustain plaintiff's cause of action, and for this reason I can not consent to a simple reversal of the judgment. The cause ought to be remanded for another trial.