SAWYER, Respondent, v. SANDERSON & THOMAS, Appellants.

St. Louis Court of Appeals, June 1, 1905.

(Opinion by Bland, P. J.)

1. SALES: Consideration: Dramshop License. Where a bill of sale was executed and delivered reciting a lump sum as a consideration for saloon stock, license, etc., and the purchaser took possession of the saloon and conducted it in the seller's name by an agreement between the parties, the license constituted a part of the consideration for the price paid.

2. ———: ———: ———. The transfer of a dramshop license is prohibited by the statute, section 2992, Revised Statutes of 1899, and a contract for such a transfer is void so that no suit can be maintained upon it.

3. ———: ———: Illegal Consideration. Where part of a consideration for an undertaking is illegal, the contract is void, therefore, where a saloon license was included in the terms of a sale transferring the stock, good will, etc., of the saloon, a note given for part of the purchase price was void and recovery could not be had upon it.

4. ———: ———: ———: Knowledge of Seller. The rule that the mere knowledge by a seller that the article sold is to be used for an illegal purpose, does not invalidate the sale, has no application to sales of things prohibited by statute.

5. ———: ———: ———. Where the seller of a saloon stock, good will and license knew that the purchasers intended to use the license in violation of law and aided them in that purpose

Sawyer v. Sanderson & Thomas.

by transferring the license to them and turning over his saloon to their possession to be conducted without license, his knowledge of, and participation in, the unlawful design was sufficient to render his contract void so that he could not recover on a note given for the purchase price.

6. ———: ———: **Dramshop License.** The provisions of the statute relating to dramshop licenses show that a dramshop license is a personal privilege and can not be transferred by the licensee and for that reason would not be a valid consideration for an undertaking.

### (Separate Opinion by Nortoni, J.)

7. ———: ———: ———. Where the seller testified that he knew the licenses were going into the deal whereby he transferred his saloon, "if they, the purchasers, wanted them," and it was shown that he went out of business and that the purchasers immediately stepped into the possession, that there was no time for application for a dramshop license by the purchasers, the licenses were necessarily included in the trade and it clearly shows that all parties intended the purchaser should conduct business under the old licenses.

8. ———: ———: **Illegal Consideration: Conduct of Parties.** It is always proper to look at the conduct of parties, at the time of the execution of a contract, their acts under and in furtherance of the contract, to arrive at their intention with respect to it; they will be bound by the construction which, by their acts, they place upon it.

### (Dissenting Opinion by Goode, J.)

9. ———: ———: **Dramshop License.** At the sale of a saloon stock, good will, etc., the inclusion of the licenses would not vitiate the entire contract and prevent a recovery on a note given for the purchase price, unless both parties intended that the licenses should be utilized by the purchaser in conducting the business.

10. ———: ———: ———: **Intention.** In an action on a note given for the purchase money whether the seller agreed that the purchaser should continue the business under the old license, was a question of fact for the jury, and was properly submitted to them.

Appeal from Newton Circuit Court.—*Hon. H. C. Pepper*, Judge.

REVERSED.

Sawyer v. Sanderson & Thomas.

*Geo. Hubbert, H. J. Green* and *J. B. Lloyd* for appellant.

The prohibition of section 2992, R. S. 1899, apart from any other consideration, renders the contract for the transfer of the dramshop licenses in question incurably void. And enforcement of the public policy of this State, as to the business of dramshops and the licensing thereof, would necessarily result likewise, without that statutory provision. Mitchell v. Branham, 79 S. W. 739; Sedalia Board v. Brady, 78 Mo. App. 585; Swing v. Cider Co., 77 Mo. App. 391, 397; Parsons v. Randolph, 21 Mo. App. 353; Woolfolk v. Duncan, 80 App. 421; Buckingham v. Fitch, 18 Mo. App. 91; Sprague v. Rooney, 104 Mo. 349; Patton v. Nicholson, 3 Wheat. (U. S.) 204; 4 L. Ed. 371; Craig v. Mo., 4 Peters 410; 7 L. Ed. U. S. 903, 912; Strahan v. Hamilton, 38 Ind. 56; Sanderson v. Goodrich, 46 Barb. 616; State v. Searcy, 20 Mo. 489; Downing v. Ringer, 7 Mo. 585; Penn v. Borman, 102 Ill. 523, 14 Am. Rep. 393; Melchour v. McCarty (Wis.), 11 Am. Rep. 605; Ohio Co. v. Merchants Co. (Tenn.), 53 Am. Dec. 742, 749.

*Galen & A. E. Spencer* for respondent.

(1) Aside from the license, there was ample consideration to support the note. So the situation is not as it would be were the sole consideration the attempted transfer of the license. Then, under our theory, there would be no consideration, as the license did not possess the quality of assignability. Pierce v. Pierce (Ind.), 46 N. E. 482. (2) There was no illegal consideration in this case. The inhibition against transfer or assignment of dramshop licenses in this State is statutory, being found in section 2992, R. S. 1899, and is as follows: "Nor shall the license of a dramshop keeper be assignable or transferable;" it does not undertake to punish the assignor or assignee, but merely declares one of the

attributes of the license; that is, it is impossible to assign or transfer it. It is a purely personal privilege, and the owner cannot pass it to another. This quality of assignability being denied, an attempt to assign or transfer the license accomplishes nothing, and violates no law. It is an act without force or effect. On the other hand, one who sells under the attempted assignment of a dramshop license is guilty of selling liquor without license, and subject to punishment therefor. This completely effectuates the legislative intent. Bowditch v. Co., 141 Mass. 292, 4 N. E. 798; Lumber Co. v. Sims, 101 Mo. App. 569, 74 S. W. 128. (3) Mere knowledge by plaintiff of an illegal purpose on part of defendants will not render contract illegal. If the insertion of the word "licenses" in plaintiff's bill of sale was without legal effect, then the contract would not be rendered illegal by plaintiff's mere knowledge of an illegal purpose on the part of defendants. Michael v. Bacon, 49 Mo. 474; Curran v. Downs, 3 Mo. App. 468; 2 Beach Mod. Contracts, p. 1901, sec. 1457; 15 Am. & Eng. Ency. Law (2 Ed.), p. 987.

### STATEMENT.

The suit is to cover a balance alleged to be due on a promissory note for the principal sum of $4,000, dated January 8, 1900, due twelve months after date, with seven per cent interest, payable to plaintiff and executed by the defendants.

Omitting caption, the answer is as follows:

"Come the defendants, and for answer to the petition, admit the execution of the note sued on, but deny any liability thereon. Defendants for further answer, say that the sole and only consideration for said note was the sale and transfer of a stock of intoxicating liquors and the business of a saloon, from plaintiff to defendants, known as the Joplin Hotel Bar, in the city of Joplin, Jasper county, Missouri, and the good will

and license, etc., hereinafter mentioned. That said liquors, etc., were sold and delivered to defendants, with the express agreement, purpose and intention, on part of plaintiff, that the same should be unlawfully used, vended and sold, by the defendants, at retail, in said Joplin Hotel Bar, in Jasper county, Missouri, for the purpose below mentioned, without defendants having any legal authority or license to sell or vend the same; that said liquors, business, good will and license were so unlawfully sold at said county and State, and said business was therewith thereafter conducted, with the approval, sanction, aid and consent of the plaintiff, without lawful license and in open violation of the laws of the State of Missouri. That on the eighth day of January, 1900, at the date of said note and transfer of said saloon business, the stock of liquors and fixtures did not exceed two thousand ($2,000) dollars in value, and that the agreed consideration, paid plaintiff altogether, was four thousand ($4,000) dollars cash, and four thousand ($4,000) dollars in and represented by the note sued on; that in order to close said deal and obtain the execution of said note, and as an inducement to defendants to execute the same, and as a part of its consideration, plaintiff (being a regular licensed dramshop keeper in said city, holding license therefor from said city, county and State) assigned and delivered his said dramshop keeper's license for said county, State and city, to the defendants; and likewise, as a part of said transaction and for the same purpose and consideration, the plaintiff, at the same time, sold his good will, as based on said license in the said liquor and saloon business, to the defendants; and likewise and for the same purpose plaintiff, as part of said consideration for said note, guaranteed to the defendants that the room in which said hotel bar was run and operated, should not cost the defendants to exceed one hundred and fifty ($150) dollars per month for a period of one year from said date; and in pursuance of said sale and transfer of said saloon and business, and

as part of said consideration, and as a part of said transaction and for said note, the plaintiff executed and delivered to the defendants a certain writing of which the following is a copy:

" 'Carthage, Mo., January 8, 1900.

" 'For and in consideration of the sum of eight thousand ($8,000) dollars, paid to me this day, I grant, bargain and sell to S. H. Sanderson and Geo. H. Thomas all my goods, license, good will, etc., to my saloon known as the Joplin Hotel Bar, located in the Joplin Hotel, Joplin, Mo., and do guarantee the title to the same. I also agree to pay all bills of the said house up to date, and guarantee that Sanderson and Thomas can have the room that the saloon is now in, for at least one year, at one hundred and fifty ($150) dollars per month.

" 'THOMAS SAWYER.'

"That pursuant to said agreement, said plaintiff thereupon immediately delivered possession of said saloon and stock to defendants, who, with the knowledge, consent, aid, co-operation and good will of plaintiff, engaged in the retail sale of said liquors at said Joplin Hotel Bar, under said licenses, in said room and under and in pursuance of said contract and the giving of said note. Defendants say that said sale and assignment of said license was in violation of section 2992, Revised Statues 1899, of Missouri, contrary to general law and against public policy; and, by reason of the premises, said note is void and without consideration, wherefore defendants ask to be discharged and that they have judgment for costs."

The reply was a general denial.

Defendants, having admitted the execution of the note, took the burden of proof. To sustain the issues on their part, they offered evidence showing that the note was given in part consideration for the sale and purchase of a saloon, located in the city of Joplin, Missouri, including liquors, cigars, etc., good will and li-

*censes.* The question in controversy is whether or not
the unexpired State, county and city dramshop licenses
held by plaintiff at the time of the sale were embraced
in the sale and furnished some part of the consideration
for the purchase and if so was the note void.   To show
that the licenses were embraced in the sale both defend-
ants testified that the licenses were included in the bar-
gain and it was understood they should go in on the
trade, and that defendants might conduct the saloon
business in the name of the plaintiff and under his li-
cense until the expiration of his State and county li-
cense.   In corroboration of this testimony, defendants
offered and read in evidence the following written bill
of sale:

"Carthage, Mo., Jan. 8, 1900.

"For and in consideration of the sum of eight thou-
sand ($8,000) dollars, paid to me this day, I grant and
bargain and sell, to S. H. Sanderson and Geo. H.
Thomas, all of my goods, license, good will, etc., to my
saloon, known as the Joplin Hotel Bar, located in the
Joplin Hotel, Joplin, Mo., and do guarantee the title
to the same.   I also agree to pay all bills of the said
house up to date, and guarantee that Sanderson &
Thomas can have the room that the saloon is now in for
at least one year at $150 per month.

"THOMAS SAWYER."

Defendants also offered and read in evidence the
following admissions:

"It is admitted that up to and at the time of the
sale to the defendants, the plaintiff had a license to keep
a dramshop at the saloon known as the Joplin Hotel
Bar, said license being taken out the seventh day of No-
vember, 1899, to expire on the sixth day of May, 1900.

"Dramshop License:  Recites due petition and pay-
ment of $466.30 license tax and the giving of bond by
Tom Sawyer who is 'hereby authorized and permitted
to keep a dramshop, etc., for six months at Joplin, com-

mencing Nov. 7, 1899, and ending May 6, 1900,' signed by county clerk and attested by seal of county court, Jasper county.

"The license of Sanderson next after the expiring of that to Sawyer as referred to is as follows:

"Dramshop License: Recites due petition and payment of $451.50 license tax and the giving of bond by S. H. Sanderson who 'is hereby authorized and permitted to keep a dramshop, etc., for six months at Joplin, commencing seventh of May and ending sixth November, 1900,' signed by county clerk and attested by seal of county court, Jasper county."

Three city licenses granted plaintiff for each of the months of February, March and April, 1900, were also offered in evidence. The March and April licenses were taken out in the name of plaintiff but were, in fact, procured and paid for by defendants.

The bill of sale was written out by defendant Thomas, and both he and his codefendant testified that plaintiff read it before he signed it. Plaintiff testified that he did not read the bill of sale but admitted that it was read to him by Thomas before he signed it. Plaintiff further testified that the licenses may have been spoken of in trade but he could not say for certain that they were mentioned, but was positive there was nothing said about how the saloon should be run, that he made no inquiry about it and did not know under what license the business was conducted. The following is taken from plaintiff's cross-examination:

"Q. You knew that when you sold this saloon to Sanderson and Thomas that they were taking your licenses along with the saloon? A. If they wanted them.

"Q. You didn't know that was part of the contract that that was put into the contract? A. That was put in the contract, I suppose, but I didn't know that was in the contract.

"Q. You knew that when Sanderson and Thomas took possession of that saloon and you closed the con-

tract with them, you knew the licenses were going into the deal? A. If they wanted them; they were no good to me. I was out of the business, I had no use for them.

"Q. You knew that when this saloon was sold to Mr. Thomas and Mr. Sanderson that the licenses went in as part of the consideration of this $8,000? A. I didn't consider it so.

"Q. You knew that was a fact? A. No, sir, not as a part of the consideration. As I told Mr. Spencer that it might mention the license in the contract, I see it there now. I don't even know whether I read it over or not. . . .

"Q. You went out of that business Monday morning and Mr. Sanderson immediately stepped into possession? A. Yes, sir, in fact he had possession Monday.

"Q. The business was never closed on account of this deal? A. No, sir.

"Q. There was not even time for an application for a dramshop license? A. No, sir.

"Q. You say there was no agreement or understanding about this license. What was your idea, what was your understanding? In this contract you say you agreed to grant, bargain and sell to the defendants, what did you mean by including the word license, if you didn't mean to sell it? A. I don't remember it being there.

"Q. It was there? A. Yes, sir.

"Q. You think the bill of the sale was read over to you or you read it before you signed it? A. I think so; I don't doubt but what it was there."

After all the evidence was in, the defendants moved the court to instruct the jury that under the law and the evidence plaintiff could not recover. The court refused to so instruct, and instructed the jury to the effect that notwithstanding they might find the license was embraced in the bill of sale as one of the things sold to defendants, it did not vitiate the contract of sale and note

and, unless they found from the evidence that it was agreed between plaintiff and defendants that intoxicating liquors were to be sold by defendants under plaintiff's license, they should find for plaintiff.

The jury found for plaintiff in the sum of $1,160. After an unsuccessful motion for new trial, defendants appealed.

BLAND, P. J. (after stating the facts).—1. It is conclusively shown by the bill of sale that the licenses were included in the things sold by plaintiff to the defendants, and defendants' evidence is that after the sale, they took possession of the saloon and conducted it in the plaintiff's name and under his license until the expiration of the State and county license, and that no dramshop licenses were issued to them in their names during this period. Their evidence also is that at the time the trade was made, it was agreed and understood by and between them and the plaintiff that the saloon should be run in his name. The plaintiff admitted that the licenses were mentioned and considered in the trade and confessed, on cross-examination, that he knew the saloon was not closed for an hour after the sale was made; that he knew the defendants were conducting it under his licenses, but denied that there was any agreement that it should be so conducted. There may have been no express agreement that defendants should run the saloon under plaintiff's licenses but if such was not the understanding, why were the licenses discussed in the negotiations for the sale, and why was plaintiff willing for defendants to have the licenses, and why did he embrace them in the bill of sale as one of the things sold? Plaintiff's denial that there was such an agreement is inconsistent with the bill of sale, inconsistent with his other testimony, inconsistent with every other scrap of evidence in the record and inconsistent with the facts and circumstances characterizing the sale and

what was done by the parties immediately after the bargain was made.

2. Section 2992, R. S. 1899, prohibits the transfer or assignment of a dramshop (saloon) license. "Transfer" means "the act by which the owner of a thing delivers it to another person, with the intent of passing the rights which he has in it to the latter." [Bouvier's Law Dict. (Rawle's Rev.), 1133.] One of the definitions given the term by Webster is, "to make over the possession or control of; to pass; to convey as a right from one person to another." The bill of sale is conclusive evidence of a formal transfer of the license. The transfer of the license was as complete as the transfer of the liquor and other things mentioned in the bill of sale and was as effectual as if a written assignment had been indorsed on the back thereof transferring them to the defendants, signed by the plaintiff, and it was no less a transfer, in fact, because it gave defendants no legal right to sell liquor under them, and was void in law because prohibited by statute. For the reason the transfer was void in law, the learned circuit judge was of the opinion that it furnished no part of the consideration for the sale and therefore did not affect the validity of the sale and that the note is valid, unless it was shown by the evidence that it was agreed that the liquors were to be sold by defendants under the license which had been transferred to them by the plaintiff. This view of the law finds support in the case of Pierce v. Pierce, 46 N. E. (Ind.) 490, where there was a bill of sale of saloon goods and fixtures, including license (the transfer of the license being illegal). The contention of the defendant was that the contract was illegal for the reason the license was transferred along with the saloon goods. The court, at page 483, said: "The answer avers that the 'stock mentioned in the contract consisted of intoxicating liquors then and there for sale,' but it does not aver that, without the license to sell, they were of no value. It is only the 'other property mentioned in the

contract' that was without value in the absence of the right to sell under the license. It must be presumed, nothing to the contrary appearing, that the stock of liquors had some value, and, where there is some consideration to support the contract, it will be upheld. Mere inadequacy of consideration is not sufficient to defeat a contract. [Sibbitt v. Stryker, 62 Ind. 41.] Where a person obtains all the consideration he contracts for, he cannot say there was no consideration. [Laboyteaux v. Swigart, 103 Ind. 596, 3 N. E. 373.] In the case at bar, the appellant having been bound to know that no benefit would accrue to him under the transfer of the license, and there being some consideration to support the contract, it must be presumed he obtained all the consideration for which he contracted." See also the case Strahn v. Hamilton, 38 Ind. 57. In the latter case appellant sold appellee a saloon, stock, and fixtures, furniture, etc., and transferred to him his license to sell intoxicating liquors. The transfer of the license was valued at one hundred dollars. The court held the contract divisible and allowed a recovery for the purchase price of the sale, etc., less the one hundred dollars, the consideration for the license. The authority of the Pierce case is shaken by the case of Sandage v. Studebaker Bros. Mfg Co., 142 Ind. 148, 34 L. R. A. 363, where it was held: "There can be no recovery as between the parties, on a contract made in violation of a statute, the violation of which is a penalty, although the statute does not pronounce the contract void or expressly prohibit the same." The Pierce case is certainly out of line with about all the decisions of the courts of other States where the common law prevails and is diametrically opposed to an unbroken line of decisions in this State, which hold that a contract prohibited by statute is void and that no action or suit can be maintained either at law or in equity upon such contracts, even where the statute does not expressly declare them void. [Live Stock Ass'n v. L. C. Co., 138 Mo. 394; Friend v. Porter,

50 Mo. App. 89-92; Mitchell v. Branham, 104 Mo. App. 480; 79 S. W. 739; Sedalia Board of Trade v. Brady, 78 Mo. App. 585; Swing v. Cider & Vinegar Co., 77 Mo. App. 391; Bick v. Seal, 45 Mo. App. 475.]

In Haggerty v. Ice Mfg. & Storage Co., 143 Mo. l. c. 247-8, 44 S. W. 1114, it is said: "The law will not stultify itself by promoting on the one hand what it prohibits on the other."

In Woolfolk v. Donovan, 80 Mo. App. l. c. 427, the Kansas City Court of Appeals said: "There is no distinction between a contract that is immoral in nature and tendency and therefore void as against public policy and one that is illegal and prohibited by law." Substantially the same rulings were made in Parsons v. Randolph, 21 Mo. App. 353; Sumner v. Summers, 54 Mo. 340; Shanklin v. McCracken, 140 Mo. l. c. 358-60, 41 S. W. 898; Porter v. Gaines, 151 Mo. 560, 52 S. W. 376; Ullman v. St. Louis Fair Ass'n, 167 Mo. l. c. 284, 67 S. W. 949.

In Patton v. Nicholson, 16 U. S. 204, it was ruled by Chief Justice MARSHALL, speaking for the court, that where one citizen sells to another citizen of the United States at war with Great Britain, a British sailing license for which a note was taken, the note was void because given for a license under which it was not lawful for an American citizen to sail.

In Miller v. Amon, 145 U. S. 421, it is said: "The general rule of law is, that a contract made in violation of a statute is void; and that when plaintiff cannot establish his cause of action without relying upon an illelegal contract, he cannot recover."

In Penn v. Bornman, 102 Ill. 523, the court said: "All contracts made in violation of an express statutory provision are inoperative and void, and no recovery can be had upon them." The same doctrine is announced in Ohio, etc., Trust Co. v. Ins. & Trust Co., 53 Am. Dec. (Tenn.) 742; Tatum v. Kelley, 94 Am. Dec. (Ark.) 717; Handy v. St. Paul Globe Pub. Co., 16 Am. St. Rep.

(Miss.) 695. In the latter case it was held that a void contract was not capable of ratification.

In Gerlach v. Skinner, 55 Am. Rep. (Kan.) 240, it was held that where the consideration for an assignment and transfer of a thing by a mere order to pay another the money due thereon was in part only contrary to a prohibitory statute against fraudulent assignments and conveyances, it vitiated the whole contract.

In Dow v. Taylor, 76 Am. St. Rep. (Vt.) 775, it was held: "If a contract is made in part on an illegal consideration, the whole contract is void."

The general rule is well stated in the Cyclopedia of Law and Procedure, vol. 9, page 566, as follows: "If any part of a single consideration for one or more provisions be illegal, or if there are sever l considerations for one promise, some of which are legal and others illegal, the promise is wholly void, as it is impossible to say which part or which one of the considerations induced the promise."

The written contract of sale is conclusive that the license was one of the things contracted for, and the consideration being single and indivisible, it seems to us that part of the single and inseparable consideration being void the contract as a whole is void because opposed to positive law enacted by the Legislature concerning dramshop license. But it is contended that the insertion of the word "license" in the bill of sale was without legal effect and that the mere knowledge of the plaintiff that defendants intended to use it for an illegal purpose did not vitiate the contract. Aside from felonies and crimes the majority of the decisions hold that the mere knowledge of the seller or the lender that the purchaser or borrower intends to use the article sold or money borrowed for an illegal purpose does not invalidate the contract. [Michael v. Bacon, 49 Mo. 474; Howell v. Stewart, 54 Mo. 400; Sprague v. Rooney, 82 Mo. 493; Cockrell v. Thompson, 85 Mo. 510; Prince v. Church, 20 Mo. App. 332; Kerwin & Co. v. Doran, 29

Mo. App. 397; Mitchell v. Branham, 79 S. W. (Mo. App.) 739; Webber v. Donnelly, 33 Mich. 469; Tracy v. Talmage, 14 N. Y. 162; Feineman v. Sachs, 33 Kan. 621; Anheuser-Busch Brewing Association v. Mason, 9 L. R. A. (Minn.) 506; McConihe & Co. v. McMann, 27 Vt. 95; Smith v. Godfrey, 28 N. H. 379; Wallace v. Lark, 32 Am. Rep. 516; Armfield v. Tate, 29 N. C. 258; Bishop v. Honey, 34 Texas 245; Hines v. Bank, 48 S. E. 120.]

But this doctrine applies to sales of legitimate articles of commerce that may be lawfully sold at the place of sale. It has no application to sales of things prohibited, and when it does apply the courts require but slight aid by the seller, in connection with his knowledge that the purchase is for an unlawful purpose to defeat the contract. Thus in Gaylord v. Soragen, 32 Vt. 110, where the seller marked packages of intoxicating liquors in order to aid the purchaser in quickly identifying and removing them on arrival at destination (where they could not be lawfully sold) before the officers had their suspicions aroused, it was held such aid for the unlawful purpose of the purchaser as to defeat a recovery. In Aiken v. Blaisdell, 41 Vt. 655, and Fienman v. Sachs, supra, similar rulings were made.

Discussing the question of aid given by a seller to a purchaser in order to carry out the latter's unlawful purpose, the court, in Standard Furniture Co. v. Van Alstine, 51 L. R. A. 1. c. 891, 22 Wash. 670, said: "If the vendor has knowledge of the immoral or illegal design of the vendee, and in any way aids or participates in that design, or if the contract of sale is so connected with the illegal or immoral purpose or transaction of the vendee as to be inseparable from it, the vendor cannot recover. [Tatum v. Kelley, 25 Ark. 209, 94 Am. Dec. 717; Tracy v. Talmage, 14 N. Y. 162, 67 Am. Dec. 132; Hill v. Spear, 50 N. H. 253, 9 Am. Rep. 205; Gaylord v. Soragen, 32 Vt. 110, 76 Am. Dec. 154; Aiken v. Blaisdell, 41 Vt. 665; Schankel v. Moffatt, 53 Ill. App. 382; Ralston v. Boady, 20 Ga. 449; Webster v. Munger, 8 Gray

584; Adams v. Coulliard, 102 Mass. 167; Graves v. Johnson, 156 Mass. 211, 15 L. R. A. 834, 30 N. E. 818, and note to the case in 32 Am. St. Rep. 450; Beach, Modern Law of Contracts, section 457."]

In Smith v. Godfrey, 8 Foster, 379, it was held that if it enters at all as an ingredient of the contract between parties, that the goods shall be illegally sold or that the seller shall do some act to assist or facilitate the illegal sale, the contract will not be enforced.

In Tatum v. Kelley, 25 Ark. 209; it was held that contracts which controvert the law are void and courts will never lend their aid to enforce them, and where the intention of one of the parties is to enable the other to violate the law, the contract is void.

The evidence clearly shows that the license entered as an ingredient into the sale, and the plaintiff's evidence shows that he not only knew that defendant intended to use his license in violation of the law, but that he aided them in their unlawful purpose by transferring the license to them and turning his saloon over to their possession to be conducted by them without license. We think, on plaintiff's theory of the case, this was sufficient aid to render the entire contract void and that plaintiff should have been nonsuited, independent of the statute declaring a dramshop license non-transferable it clearly appears by the dramshop act that such a transfer cannot be lawfully made. The act prohibits the sale of intoxicating liquors in less quantities than three gallons by any person other than a licensed dramshop keeper; it requires the county court to find that the applicant is a law-abiding, assessed taxpaying, male citizen, over twenty-one years of age, as a prerequisite to granting the license; it requires that the applicant shall obtain the consent of the taxpaying citizens in the locality to be affected by the dramshop that he may keep the proposed dramshop and that this consent shall be made known to the county court by a petition signed by the taxpaying citizens; it requires the

applicant, as a condition precedent to receiving the license, to give a bond to be approved by the county court, conditioned that the applicant shall at all times keep an orderly house, that he will not sell or give away liquors to minors, etc., it requires that he pay in advance the State and county license tax. The law also provides that protests may be filed against the granting of licenses to keep dramshops. Such protests may be against the dramshop itself or may be against the keeping of the dramshop by the particular applicant. These provisions show that the granting of licenses is a personal privilege to be awarded by the county court only on petition of the taxpaying citizen and only to persons possessing the statutory qualifications. For these reasons a license cannot be transferred by the licensee; to do so would be in contravention of the dramshop act, and we will not stultify ourselves by sanctioning a contract wherein the sale and transfer of a dramshop license enters and forms a part of an indivisable consideration.

The judgment is reversed. *Nortoni, J.,* concurs; *Goode, J.,* dissents.

NORTONI, J. (concurring).—I concur with Judge BLAND in all that is said in the very able opinion prepared by him. It occurs to me, however, that if there could be any question as to the intention to include and transfer the dramshop licenses, that the acts and conduct of the parties at the time clearly demonstrate what that intention was. Plaintiff testifies that he knew the licenses were going into the deal "if they (defendants) wanted them," that he went out of business on Monday morning and defendants "immediately" stepped into possession and the business was never closed nor suspended for one moment on account of the transfer of ownership. Plaintiff admits that "in fact there was not even time for an application for a

dramshop license" to be made. Plaintiff and defendants both being present, defendants went into possession under the bill of sale and continued the business *instanter* under the old license, no new licenses being taken out or applied for.

This action of the parties, then and there at the time, is conclusive to my mind upon the question of their intention and it is a construction of the contract or bill of sale, clearly showing that all parties intended at the time that defendants should continue the business under the old licenses. It is always proper to look at the conduct of the parties at the time, acting under and in furtherance of the contract, when we seek to arrive at their intention. Such conduct is entitled to great, if not controlling effect. [Am. & Eng. Ency. Law (2 Ed.), vol. 17, p. 23; Patterson v. Camden, 25 Mo. 13; Jones v. Delassus, 84 Mo. 541; City of St. Louis v. Laclede Gaslight Co., 155 Mo. 1, 55 S. W. 1003.] "I know no better mode of ascertaining this meaning than is shown if all the parties acted on a particular meaning." [Union Depot Co. v. Railroad, 131 Mo. l. c. 305, 31 S. W. 908; Whitehead v. Bank, 2 W. & S. 175.] "In case of doubt as to the significance of such term, the contemporaneous practice of the parties to the agreement regarding it (before any controversy arises) sheds light upon their probable meaning and use." [Ellis v. Harrison, 104 Mo. l. c. 279, 16 S. W. 198.]

It occurs to me that whatever may be the testimony in a matter of this kind, after a controversy arises, it will not justify a court in losing sight of the construction placed upon the bill of sale by the parties at the time of its execution and delivery of possession thereunder. When the parties, by their acts and conduct, deliberately place a construction upon their contract, which construction is in consonance with its provisions and in furtherance of its plain terms, the courts are not at liberty to disregard such construction. [Jones v.

DeLassus, 84 Mo. 545; St. Louis Gaslight Co. v. City of St. Louis, 46 Mo. 128.]

I agree with *Bland, P. J.,* in reversing the judgment.

GOODE, J. (dissenting).—The plaintiff swore that he did not know the bill of sale included the licenses, though he was willing for the defendants to have the licenses if they desired them. Plaintiff testified further that there was no arrangement between him and the defendants that the latter were to conduct the saloon in his name and under his licenses and that he knew nothing of how the business was conducted after he sold. The court left it to the jury to say whether or not there was an agreement between plaintiff and defendants in regard to what licenses the business should be run under after the sale and that a verdict should be returned in plaintiff's favor if they found there was no agreement about the matter. In other words, the court ruled that the mere attempt to sell the licenses would not vitiate the entire contract of sale between the plaintiff and the defendants and prevent the former from recovering on the note in suit, unless both parties intended that the licenses which plaintiff held, should be utilized by the defendants in conducting the business. These two instructions will show the court's theory of the case:

"If you believe from the evidence that defendants offered and agreed to pay plaintiff $8,000 for his saloon business, and plaintiff accepted, and defendants paid part of such price in cash and part in the note sued on, and plaintiff executed and delivered the contract introduced in evidence and marked Exhibit 'B' and delivered possession of such business to defendants, and there was no agreement between plaintiff and defendants as to the manner in which defendants should do business or under what license it should be run, then your verdict will be for plaintiff, even though you further find and believe from the evidence that thereafter defendants sold liq-

uors at the Joplin Hotel Bar, unlawfully or without li-
cense therefor, or sought to do business under the li-
cense issued to plaintiff and plaintiff knew such facts."

"The court instructs the jury that this case is an
action for the balance claimed to be due on a certain
promissory note given by the defendants, S. H. Sander-
son and George H. Thomas, to the plaintiff Thomas Saw-
yer. It is claimed by the defendants that the consider-
ation of the note sued on was the sale and transfer of a
certain stock of goods with which the Joplin Hotel Bar
in the city of Joplin, Jasper county, Missouri, was stock-
ed, consisting of all goods belonging to plaintiff and
used in said saloon, together with the license of said
Thomas Sawyer used in connection with the operation
of said saloon, and also the good will, etc., to the said
saloon, and the court further instructs that if you should
find from the evidence that the consideration of the note
sued on, or any part thereof, was for the sale and trans-
fer of the saloon or dramshop keeper's license of said
plaintiff to defendants, and that it was agreed that in-
toxicating liquors were to be sold under said license,
then your finding should be for the defendants."

The attempt to transfer the license was, of course,
a failure; but I fail to see how that necessarily vitiated
the entire transaction. It is argued that the evidence
conclusively shows plaintiff agreed that the defendants
should conduct the business under the old licenses and
was a party to an arrangement of that kind. I think that
on the evidence the question of whether he did or not
was one of fact for the jury and was properly submitted.
Presumably the plaintiff was not concerned as to wheth-
er the defendants attempted to continue business un-
der the old licenses or procured new ones. What he
wanted was to sell his property and business and if the
vendees chose to include in the contract of sale, dram-
shop licenses which were non-assignable, it was a mat-
ter of indifference to him. In truth the word "licenses"
may have been inserted in the bill of sale to escape pay-

ing the note. The purpose of the statute is not to prohibit the sale of a dramshop license if any one wishes to buy it; but to deny any one but the original licensee the right to keep a dramshop under it. Now if the plaintiff simply sold the licenses without becoming a party to a compact that defendants should violate the law by selling whiskey under them, or aiding an attempt on their part to do so, he is not to be defeated in this action. As the jury found him innocent of such a compact, I favor an affirmance of the judgment. [Pierce v. Pierce, 46 N. E. 482; Curran v. Downs, 3 Mo. App. 468; Mitchell v. Branham, 104 Mo. App. 480, 79 S. W. 739.]